# 25-10420 and 25-10426

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

In re: HERBERT HIRSCH, BONITA HIRSCH,
HARVEY BIRDMAN, and DIANE BIRDMAN,

Petitioners

ON PETITIONS FOR WRITS OF MANDAMUS TO
THE UNITED STATES TAX COURT

RESPONSE OF THE COMMISSIONER OF INTERNAL
REVENUE TO THE PETITIONS FOR WRITS OF MANDAMUS

MICHAEL J. HAUNGS          (202) 514-4343
GEOFFREY J. KLIMAS         (202) 307-6346
    *Attorneys*
    *Tax Division*
    *Department of Justice*
    *Post Office Box 502*
    *Washington, D.C. 20044*

*In re: Herbert and Bonita Hirsch*
**(11th Cir. – No. 25-10420)**

*In re: Harvey and Diane Birdman*
**(11th Cir. – No. 25-10426)**

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Counsel for the Commissioner of Internal Revenue, respondent herein, hereby certifies, pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, that the following persons have an interest in the outcome of these appeals or have participated in these cases as attorneys or judges:

Birdman, Diane, Petitioner

Birdman, Harvey, Petitioner

Center for Taxpayer Rights, Amicus

Chief Counsel, Internal Revenue Service

Commissioner of Internal Revenue

DiRuzzo, III, Joseph A., attorney for Petitioners

Foster III, Michael Von Krogh, attorney for Respondent

Fuerst, Mitchell S. (deceased), attorney for Petitioners

Halpern, James S., United States Tax Court Judge

Haungs, Michael J., Acting Chief, Appellate Section, U.S. Department of Justice, Tax Division

Harris, Rebecca Dance, attorney for Respondent

Hirsch, Bonita, Petitioner

Hirsch, Herbert, Petitioner

Ittleman, Andrew S., attorney for Petitioners

Jacobs, Julia I., United States Tax Court Judge

Kiessling, William W., attorney for Respondent

Kolovrat, Monica A., attorney for Respondent

Klimas, Geoffrey J., attorney for Respondent

Kostelanetz LLP

Lader, Daniel M., attorney for Petitioners

Margulis Gelfand DiRuzzo & Lambson

Ornstein-Shuler Investments, LLC, funder of Amicus

Pfeifer, Brian A., attorney for Respondent

Proctor, Gray, attorney for Amicus

Rajotte, Christopher J., attorney for Petitioners

Richman, Derek P., attorney for Respondent

Riera, Jennifer Correa, attorney for Petitioners

Thornton, Michael B., United States Tax Court Judge

Urda, Patrick J., United States Tax Court Judge

Vasquez, Juan F., United States Tax Court Judge

Weiner, Andrew, attorney for Amicus

Welty, Michael Todd, attorney for Amicus

# STATEMENT REGARDING ORAL ARGUMENT

At issue in these consolidated proceedings is taxpayers' request that this Court issue writs of mandamus directing the Tax Court to conduct jury trials as to their liability for tax fraud penalties, notwithstanding that the Tax Court is an Article I tribunal that has never conducted a jury trial and lacks the authority to do so; that no court has ever held that a taxpayer has the right to a jury trial in a pre-payment suit against the federal government contesting tax penalties; and that taxpayers here chose to proceed in a non-jury forum when an alternative jury forum was available. Because the Tax Court's inability to conduct a jury trial is clear, counsel for the Commissioner respectfully submit that oral argument is unnecessary and the petitions should be summarily denied. Nonetheless, we stand ready to present oral argument if the Court believes it would be helpful.

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons and

    Corporate Disclosure Statement ................................................... C-1

Statement regarding oral argument.............................................................i

Table of contents......................................................................................ii

Table of citations ..................................................................................... v

Statement of jurisdiction.....................................................................xviii

    1.    Jurisdiction in the Tax Court....................................xviii

    2.    Jurisdiction in the Court of Appeals...........................xix

Statement of the issue...............................................................................1

Statement of the case ...............................................................................1

    A.    Course of proceedings and disposition in the court

        below ..............................................................................1

    B.    Statement of the facts....................................................2

        1.    The relevant framework governing

            challenges to the determination of tax

            liabilities and penalties .........................................2

        2.    Proceedings in the Tax Court................................5

    C.    Statement of the standard or scope of review ..............7

**Page**

Summary of argument ................................................................. 7

Argument ..................................................................................... 9

    Taxpayers' mandamus petitions should be denied ......................... 9

A.   The Tax Court correctly held that it lacks

      authority to conduct a jury trial ..................................... 9

B.   The Tax Court correctly held that taxpayers have

      no constitutional right to a jury trial .......................... 16

1.   There is no constitutional right to a jury trial

      in suits against the sovereign ............................. 17

2.   There is no constitutional right to a jury trial

      in matters concerning the collection of

      revenue, which generally fall under the

      "public rights" exception to the Seventh

      Amendment .......................................................... 22

3.   Taxpayers' remaining arguments do not

      establish a constitutional right to a jury trial .... 27

**Page**

C.    At all events, the Tax Court correctly held that taxpayers waived any jury-trial right they may have had ........................................................................36

Conclusion................................................................40

Certificate of compliance .........................................41

# TABLE OF CITATIONS

**Cases:** **Page(s)**

*Acker v. Commissioner,*

26 T.C. 107 (1956)..........................................................35

*Allen v. United States,*

51 F.3d 1012 (11th Cir. 1995) ....................................25

*Allied Chem. Corp. v. Daiflon, Inc.,*

449 U.S. 33 (1980) ...............................................xiv, 7

*Atlas Roofing Co., Inc. v. Occupational Safety and*

*Health Review Comm'n*, 430 U.S. 442 (1977)........................26, 28

*Ex parte Bakelite Corp.,*

279 U.S. 438 (1929) ......................................................36

*Bakrac, Inc. v. Villager Franchise Sys., Inc.,*

164 F. App'x. 820 (11th Cir. 2006) ...............................36

*Bartlett v. Kane,*

57 U.S. (16 How.) 263 (1853) .....................................26

*Beacon Theatres, Inc. v. Westover,*

359 U.S. 500 (1959) ....................................................xiv

\* *Cases or authorities chiefly relied upon have asterisks.*

**Cases (continued):**                                    **Page(s)**

*In re Ben Cooper, Inc.*,

    896 F.2d 1394 (2d Cir. 1990) ......................................... 15

*Birdman v. Commissioner*,

    Nos. 28897-10, 5816-11, and 5817-11 (Tax Ct.) ................... xii, xiii

*\*Blackburn v. Commissioner*,

    681 F.2d 461 (6th Cir. 1982) ....................................... 14, 18, 27, 38

*Bull v. United States*,

    295 U.S. 247 (1935) ..................................................... 23

*Cheatham v. United States*,

    92 U.S. (2 Otto) 85 (1875) ............................................ 23

*Christian Coal. of Fla., Inc. v. United States*,

    662 F.3d 1182 (11th Cir. 2011) ...................................... 13

*CIC Servs., LLC v. Internal Revenue Serv.*,

    141 S. Ct. 1582 (2021) ................................................. 2

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,

    526 U.S. 687 (1999) ..................................................... 19

*\* Cases or authorities chiefly relied upon have asterisks.*

**Cases (continued):**                                        **Page(s)**

*Commissioner v. McCoy,*

484 U.S. 3 (1987) ............................................................ 10

*\*Commodity Futures Trading Comm'n v. Schor,*

478 U.S. 833 (1986) ........................................................ 36

*Cont'l Tech. Servs., Inc. v. Rockwell Int'l Corp.,*

927 F.2d 1198 (11th Cir. 1991) (per curiam) ................ 39

*Continental Equities, Inc. v. Commissioner,*

551 F.2d 74 (5th Cir. 1977) ........................................... 10

*Dairy Queen, Inc. v. Wood,*

369 U.S. 469 (1962) ...................................................... xiv

*In re Don Hamilton Oil Co.,*

783 F.2d 151 (8th Cir. 1986) (per curiam) .............. xiv, 7

*\*Dorl v. Commissioner,*

507 F.2d 406 (2d Cir. 1974) ..................................... 14, 27

*\*Ducharme v. Merrill-Nat'l Labs.,*

574 F.2d 1307 (5th Cir. 1978) ....................................... 21

\* *Cases or authorities chiefly relied upon have asterisks.*

**Cases (continued):** **Page(s)**

*First Nat'l Bank of Waukesha v. Warren,*

796 F.2d 999 (7th Cir. 1986) ....................................................xiv, 7

*Flora v. United States,*

357 U.S. 63 (1958), *aff'd on reh'g,* 362 U.S. 145 (1960)..................3

*Florida v. Royer,*

460 U.S. 491 (1983) ........................................................................30

*\*Funk v. Commissioner,*

687 F.2d 264 (8th Cir. 1982) ............................................14, 18, 27

*G.M. Leasing Corp. v. United States,*

429 U.S. 338 (1977) ..........................................................................3

*Galloway v. United States,*

319 U.S. 372 (1943) ........................................................................18

*Garner v. U.S. Dep't of Labor,*

221 F.3d 822 (5th Cir. 2000) ..........................................................33

*Glidden v. Zdanok,*

370 U.S. 530 (1962) ........................................................................18

*\* Cases or authorities chiefly relied upon have asterisks.*

**Cases (continued):**                                   **Page(s)**

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc.,*

    921 F.3d 1343 (11th Cir. 2019) ..................................... 7

*\*Helvering v. Mitchell,*

    303 U.S. 391 (1938) ..................................... 24, 26, 31-32

*Hirsch v. Commissioner,*

    Nos. 28898-10, 5819-11, 5821-11,

    and 6034-11 (Tax Ct.) .............................................. xi, xiii

*Hudson v. United States,*

    522 U.S. 93 (1997) ........................................................ 33

*Ishler v. Internal Revenue,*

    237 F. App'x. 394 (11th Cir. 2007) .............................. 21

*Jarkesy v. S.E.C.,*

    34 F.4th 446 (5th Cir. 2022) ........................................ 5-6

*\*Korecky v. Commissioner,*

    781 F.2d 1566 (11th Cir. 1986) .................................... 35

*LaMarca v. Turner,*

    995 F.2d 1526 (11th Cir. 1993) .................................... 36

*\* Cases or authorities chiefly relied upon have asterisks.*

**Cases (continued):** **Page(s)**

*Lee v. Commissioner,*

227 F.2d 181 (5th Cir. 1955) ..................................................31-32

*Lehman v. Nakshian,*

453 U.S. 156 (1981) ......................................................... 11, 18, 21

*Lewis v. Clarke,*

581 U.S. 155 (2017) ....................................................................... 17

*Little v. T-Mobile USA, Inc.,*

691 F.3d 1302 (11th Cir. 2012) .................................................... 39

*Loftin & Woodard, Inc. v. United States,*

577 F.2d 1206 (5th Cir. 1978) ...................................................... 25

*Maier v. Commissioner,*

360 F.3d 361 (2d Cir. 2004).................................................... 10, 14

*Mathes v. Commissioner,*

576 F.2d 70 (5th Cir. 1978) ........................................ 11, 14, 18, 38

*McElrath v. United States,*

102 U.S. (12 Otto) 426 (1880).............................................18, 36-37

*\* Cases or authorities chiefly relied upon have asterisks.*

**Cases (continued):** **Page(s)**

*Murray's Lessee v. Hoboken Land & Improvement Co.,*

    59 U.S. (18 How.) 272 (1856) ........................3, 23-24, 26

*\*Oceanic Steam Navigation Co. v. Stranahan,*

    214 U.S. 320 (1909) ................................................25-26

*\*Olshausen v. Commissioner,*

    273 F.2d 23 (9th Cir. 1959) .............................14, 27, 29-30, 36, 38

*Omnipol, A.S. v. Multinational Def. Servs., Inc.,*

    32 F.4th 1298 (11th Cir. 2022).......................................21

*\*Origet v. Hedden,*

    155 U.S. 228 (1894) ...................................................26

*Osborn v. Haley,*

    549 U.S. 225 (2007) ...................................................19

*\*Passavant v. United States,*

    148 U.S. 214 (1893) ...................................................26

*Peretz v. United States,*

    501 U.S. 923 (1991) ...................................................16

*\* Cases or authorities chiefly relied upon have asterisks.*

**Cases (continued):**                                          **Page(s)**

*Phillips v. Commissioner*,

    283 U.S. 589 (1931) ................................................................ 26, 38

*Polselli v. Internal Revenue Serv.*,

    598 U.S. 432 (2023) ..................................................................... 25

*Roberts v. Commissioner*,

    175 F.3d 889 (11th Cir. 1999) .................................................... 10

*Rowlee v. Commissioner*,

    80 T.C. 1111 (1983)..................................................................... 18

*S.E.C. v. Jarkesy*,

    603 U.S. 109 (2024) ......................................6, 19-24, 30, 32-35, 39

*Sec'y, U.S. Dep't of Labor v. Preston*,

    873 F.3d 877 (11th Cir. 2017) .................................................... 36

*Segal v. Commissioner*,

    177 F. App'x. 29 (11th Cir. 2006) ............................................... 17

*Smith's Estate v. Commissioner*,

    638 F.2d 665 (3d Cir. 1981).......................................................... 10

\* *Cases or authorities chiefly relied upon have asterisks.*

**Cases (continued):** **Page(s)**

*Stern v. Marshall,*

    564 U.S. 462 (2011) ........................................................ 22

\*Stockwell v. United States,

    80 U.S. 531 (13 Wall.) 547 (1871) ........................... 31-32

*In re Stone,*

    569 F.2d 156 (D.C. Cir. 1978) ..................................... xiii

\*Swanson v. Commissioner,

    65 T.C. 1180 (1976) ..................................... 12, 14, 29, 38

\*Tershakovec v. Ford Motor Co., Inc.,

    79 F.4th 1299 (11th Cir. 2023) .................................... 34

*Thomas v. Commissioner,*

    62 F.3d 97 (4th Cir. 1995) ........................................... 31

*Tull v. United States,*

    481 U.S. 412 (1987) ........................................... 18-19, 33

*United States v. Janis,*

    428 U.S. 433 (1976) ........................................................ 2

\* *Cases or authorities chiefly relied upon have asterisks.*

**Cases (continued):** **Page(s)**

*United States v. McMahan,*

    569 F.2d 889 (5th Cir. 1978) (en banc) ......................................... 38

*United States v. Shalhoub,*

    855 F.3d 1255 (11th Cir. 2017) ...................................................... 9

*United States v. Shanbaum,*

    10 F.3d 305 (5th Cir. 1994) .......................................................... 28

*United States v. Sherwood,*

    312 U.S. 584 (1941) ...................................................................... 17

\*United States, Walker v. — see below

*\*Walker v. United States,*

    240 F.2d 601 (5th Cir. 1957) ........................................................ 26

*Wickwire v. Reinecke,*

    275 U.S. 101 (1927) ...................................................................... 24

**Statutes:**

All Writs Act, 28 U.S.C. §1651 ..........................................................xiii

Hearth Act of 1662, ch. XVIII, https://www.british-

    history.ac.uk/statutes-realm/vol5/pp390-393 (last

    visited Apr. 1, 2025) ................................................................29-30

\* *Cases or authorities chiefly relied upon have asterisks.*

**Statutes (continued):**                            **Page(s)**

Internal Revenue Code (26 U.S.C.):

§§6211-6213 ................................................................ 3

§6212 ....................................................................... xi

§6212(a) .................................................................... 3

§6213 ...................................................................... xii

*§6213(a) ......................................................3-4, 28, 37

§6213(c) .................................................................... 4

§6214 ...................................................................... xii

*§§6532(a)(1) .......................................................2, 37

§6651 ...................................................................... 32

§6651(a)(1) .............................................................. 24

§6651(f) ............................................................. 24, 34

§6663 ...................................................................... 32

§6663(a) .................................................................. 24

§6665(a)(1) ......................................................... 3, 24

§6671(a) ............................................................. 3, 24

§7401 ................................................................. 5, 28

* Cases or authorities chiefly relied upon have asterisks.

**Statutes (continued):** **Page(s)**

Internal Revenue Code (26 U.S.C.) (cont'd):

    §7402(a) ............................................................ 5, 28

    *§7422(a) .......................................................... 2, 37

    §7441 ............................................................ 4, 10-11

    §7443(b) ................................................................ 4

    §7443(e) ................................................................ 4

    §7453 .................................................................... 4

    *§7459(a) ........................................................ 12, 28

    *§7459(b) ............................................................. 12

    *§7482(a)(1) .................................................. xiii, 4, 12

    §7482(b) ............................................................ xiii

Jury Selection and Service Act, 28 U.S.C. §1861, *et seq.* ............. 12-13

Revenue Act of 1924, Chapter 234, §900, 43 Stat. 253 ..................... 28

Revenue Act of 1942, Chapter 619, §504, 56 Stat. 798 .................... 29

Sugar Act of 1764, Chapter 40,

    https://avalon.law.yale.edu/18th_century/sugar_act_1

    764.asp (last visited Apr. 1, 2025) ........................................ 29-30

\* Cases or authorities chiefly relied upon have asterisks.

| Statutes (continued): | Page(s) |
|---|---|

Whiskey Tax of March 3, 1791, ch. 15, §44, 1 Stat. 199...............29-30

28 U.S.C.:

§151 ........................................................................................15

§157(a) ...................................................................................15

§157(e) ...................................................................................15

§631(a) ...................................................................................15

§636(b) ...................................................................................15

§636(c)(1) ...............................................................................15

*§1346(a)(1).....................................................................2, 37-38

§2402 ......................................................................................38

**Miscellaneous:**

*Black's Law Dictionary* (12th ed. 2024) .............................30

Boris I. Bittker & Lawrence Lokken, *Fed. Taxation of*

  *Income, Estates, and Gifts* (2024) ..................................11

*Mertens Law of Fed. Income Taxation* (Aug. 2024 Update).............11

*U.S. CONST. Amendment VII .. 2, 5-8, 16-20, 22, 26, 30, 33-34, 36, 39

* Cases or authorities chiefly relied upon have asterisks.

# STATEMENT OF JURISDICTION

## 1.    Jurisdiction in the Tax Court

The Internal Revenue Service ("IRS"), pursuant to Internal

Revenue Code ("I.R.C.") §6212, mailed notices of deficiency to Herbert

and Bonita Hirsch on September 30, 2010, and December 15, 2010,

which determined deficiencies in federal income tax and civil tax

penalties, including fraud penalties, for the 2003 to 2006 tax years.

(Hirsch.Apdnx.99-220.)  The Hirsches timely petitioned the Tax Court

for redeterminations of the liabilities in the notices on December 27,

2010, and March 10, 2011.  (Hirsch.Apdnx.2, 34, 66); *Hirsch v.

Commissioner*, Nos. 28898-10, 5819-11, 5821-11, and 6034-11 (Tax Ct.).

The IRS, pursuant to I.R.C. §6212, mailed notices of deficiency to

Harvey and Diane Birdman on September 30, 2010, and February 22,

2011, which determined deficiencies in federal income tax and civil tax

penalties, including fraud penalties, for the 2003 to 2006 tax years.

(Birdman.Apdnx.98-211.)  The Birdmans timely petitioned the

Tax Court for redeterminations of the liabilities in the notices on

December 27, 2010, and March 10, 2011.  (Birdman.Apdnx.2, 34, 66);

*Birdman v. Commissioner*, Nos. 28897-10, 5816-11, and 5817-11 (Tax Ct.).

The Tax Court has jurisdiction over the petitions filed by the Hirsches and Birdmans (collectively, "taxpayers") pursuant to I.R.C. §§6213 and 6214. There are no final decisions in taxpayers' Tax Court cases, which remain pending. In May 2022, taxpayers filed documents captioned "Notice of Demand for Jury Trial & Memorandum of Law in Support," which requested jury trials as to the tax fraud penalties (but not the deficiencies in tax and other, non-fraud penalties). (Hirsch.Apdnx.21, 54, 86; Birdman.Apdnx.19, 52-53, 84.) The Tax Court entered orders denying the Birdmans' and Hirsches' demands for jury trials on October 11, 2022, and October 12, 2022, respectively (Birdman.Apdnx.212-213; Hirsch.Apdnx.221-222), and the court denied the Birdmans' and Hirsches' motions to reconsider on December 20, 2024, and December 23, 2024, respectively (Birdman.Apdnx.214; Hirsch.Apdnx.223).

## 2. Jurisdiction in the Court of Appeals

The Hirsches and Birdmans filed mandamus petitions with this Court on February 10, 2025, and the Hirsches filed an amended

mandamus petition on February 11, 2025. In light of the mandamus petitions, the Tax Court has stayed further proceedings and removed taxpayers' cases from the trial calendar, pending resolution of the proceedings in this Court. *Hirsch v. Commissioner*, No. 28898-10 (Tax Ct.) (Order dated Feb. 28, 2025); *Birdman v. Commissioner*, No. 28897-10 (Tax Ct.) (Order dated Feb. 28, 2025). On March 12, 2025, this Court entered an order consolidating taxpayers' mandamus petitions and directing the Commissioner to respond.

This Court's jurisdiction to award mandamus relief is governed by the All Writs Act, which provides for the issuance of "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651(a). Where a taxpayer requests mandamus relief directed at the Tax Court judge presiding over his petition seeking a redetermination of tax deficiencies and penalties, his mandamus petition is properly directed to the court of appeals to which an appeal from the Tax Court's final decision will lie (here, the Eleventh Circuit). *In re Stone*, 569 F.2d 156, 158 (D.C. Cir. 1978); I.R.C. §7482(a)(1), (b).

xxi

Appellate courts can, in appropriate circumstances, issue a writ of mandamus directing a district court to conduct a jury trial. *E.g.*, *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479-80 (1962); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 511 (1959). However, a petition seeking such a writ may be denied without reaching the merits if the litigant fails to establish that its entitlement to a jury trial is "'clear and indisputable.'" *First Nat'l Bank of Waukesha v. Warren*, 796 F.2d 999, 1006 (7th Cir. 1986) (Easterbrook, J.) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980)); *In re Don Hamilton Oil Co.*, 783 F.2d 151, 151-52 (8th Cir. 1986) (per curiam). We are aware of no case in which a court has held that mandamus was an appropriate vehicle to challenge the denial of a jury trial in an Article I tribunal that, like the Tax Court, lacks authority to conduct jury trials. *See infra*, pp. 9-16.

## STATEMENT OF THE ISSUE

Whether taxpayers are entitled to writs of mandamus directing the Tax Court to conduct jury trials for the portions of their income tax liabilities attributable to fraud penalties.

## STATEMENT OF THE CASE

### A.    Course of proceedings and disposition in the court below

Taxpayers filed Tax Court petitions against the Commissioner, seeking a redetermination of the federal income tax deficiencies and penalties, including fraud penalties, contained in notices of deficiency issued by the IRS.[1]  (Hirsch.Apdnx.2, 34, 66.)  Over ten years after the cases were docketed, taxpayers demanded jury trials as to the fraud penalties (but not the deficiencies in tax and other, non-fraud penalties).  (Hirsch.Apdnx.21, 54, 86.)  The Tax Court (Judge Patrick J. Urda) entered an order denying the demands for jury trials because the

_____

[1] The Hirsches and Birdmans are represented by the same attorneys and filed substantially identical demands for jury trials, which the Tax Court denied with substantially identical orders.  In this Court, the Hirsches and Birdmans have filed substantially identical mandamus petitions.  For convenience, we cite only the Hirsches' amended mandamus petition and documents filed in the Hirsches' Tax Court cases.

Seventh Amendment does not apply in suits against the sovereign,
including suits against government officers in their official capacity.
(Hirsch.Apdnx.221-222.) Alternatively, the court held that taxpayers
waived any jury-trial right they may have had by choosing to bring suit
in the Tax Court (where jury trials are unavailable) rather than district
court (where they are). (Hirsch.Apdnx.222.) Taxpayers moved for
reconsideration, which the Tax Court summarily denied.
(Hirsch.Apdnx.223.)

> **B.** **Statement of the facts**

>> **1.** **The relevant framework governing challenges to the determination of tax liabilities and penalties**

(a) The traditional mechanism for taxpayers to dispute their
liability for taxes and tax penalties is a post-payment refund suit. *See*
*CIC Servs., LLC v. Internal Revenue Serv.*, 141 S. Ct. 1582, 1586 (2021).
To bring a refund suit, a taxpayer must first pay the taxes and
penalties, ordinarily in full; submit a refund claim; and, if the IRS
denies the claim or six months elapse without a decision thereon, file a
refund suit in district court or the Court of Federal Claims. *See* I.R.C.
§§6532(a)(1), 7422(a); 28 U.S.C. §1346(a)(1); *United States v. Janis*,
428 U.S. 433, 440 (1976). This "pay first and litigate later" approach,

*Flora v. United States*, 357 U.S. 63, 75 (1958), *aff'd on reh'g*, 362 U.S. 145 (1960), embodies the longstanding tradition of Anglo-American law. *See, e.g., Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 277-78 (1856). The Supreme Court has long recognized that post-payment review comports with due process. *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 352 n.18 (1977) (collecting cases).

(b) For some taxes and penalties, Congress has provided an additional, pre-assessment and pre-payment avenue of judicial review for taxpayers to dispute their liability. Specifically, Congress has provided so-called "deficiency procedures" for assessing and collecting income, estate, and certain excise taxes and associated penalties. *See* I.R.C. §§6211-6213, 6665(a)(1), 6671(a). For taxes subject to deficiency procedures, the IRS is authorized to issue a "notice of deficiency" to a taxpayer determined to have failed to correctly report his tax liability. *See* I.R.C. §6212(a). The taxpayer may then petition the Tax Court for a redetermination of the liability set forth in the notice of deficiency. *See* I.R.C. §6213(a). With certain exceptions, the IRS may not assess or collect the liability during the pendency of deficiency proceedings in the

Tax Court, and premature assessment or collection actions "may be enjoined by a proceeding in the proper court." I.R.C. §6213(a).

Congress established the Tax Court under Article I of the Constitution. I.R.C. §7441. Nonetheless, it is, by design, "not an agency of, and shall be independent of, the executive branch of the Government." *Id.* Consistent with this independence, Tax Court judges are appointed by the President to 15-year terms. I.R.C. §7443(b), (e). Proceedings in the Tax Court are conducted in accordance with the Federal Rules of Evidence. I.R.C. §7453. And taxpayers dissatisfied with Tax Court decisions can have their cases reviewed by the applicable court of appeals "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." I.R.C. §7482(a)(1).

(c) A taxpayer in receipt of a notice of deficiency may also choose to do nothing, in which case the IRS may assess the taxes and tax penalties and provide notice and demand for payment thereof. I.R.C. §6213(c). If the IRS's administrative efforts to collect the taxes and penalties prove unsuccessful, the onus is then on the Government to commence a suit against the taxpayer in district court and establish

that it is entitled to a judgment for the unpaid liabilities.  I.R.C. §§7401, 7402(a).

## 2.      Proceedings in the Tax Court

The IRS issued notices of deficiency to taxpayers, determining deficiencies in federal income tax and associated penalties, including fraud penalties.  (Hirsch.Apdnx.99-220.)  Taxpayers elected not to pay the liabilities and sue for a refund in district court, where they could have requested a jury trial, or the Court of Federal Claims.  Taxpayers also elected not to wait for the Government to bring district-court suits to reduce the liabilities to judgment, where they also could have requested a jury trial.  Instead, taxpayers petitioned the Tax Court for a redetermination of their liabilities.  (Hirsch.Apdnx.2, 34, 66.)

After more than a decade of discovery and pretrial proceedings, taxpayers filed documents captioned "Notice of Demand for Jury Trial & Memorandum of Law in Support," requesting jury trials as to the fraud penalties and relying on *Jarkesy v. S.E.C.*, 34 F.4th 446 (5th Cir. 2022).  (Hirsch.Apdnx.21, 54, 86.)  There, the Fifth Circuit held that an SEC enforcement action to impose civil fraud penalties was akin to a common-law action in debt to which Seventh Amendment rights

attached. *Jarkesy*, 34 F.4th at 453-57.  The Fifth Circuit further held that the SEC could not deprive the petitioners of the opportunity to request a jury trial by unilaterally choosing to bring its enforcement action before its own administrative law judge rather than an Article III court. *Id.* at 457.

The Tax Court denied taxpayers' jury-trial demand.  The court distinguished between (i) enforcement actions that the Government brings against a private party and (ii) suits that a private party brings against the Government.  The court held that, while Seventh Amendment rights may attach to enforcement actions that the Government brings against a private party, no such rights attach where, as in a Tax Court petition, a private party brings suit against the sovereign.  The court further held that, even if taxpayers had a right to a jury trial, they waived that right by choosing to proceed in the Tax Court (where jury trials are unavailable) rather than district court (where they are).  (Hirsch.Apdnx.221-222.)

The Supreme Court subsequently affirmed the Fifth Circuit's decision in *S.E.C. v. Jarkesy*, 603 U.S. 109 (2024).  Taxpayers moved for

reconsideration, which the Tax Court denied. (Hirsch.Apdnx.23, 56, 137, 223.)

### C. Statement of the standard or scope of review

This Court reviews *de novo* the trial court's denial of a party's demand for a jury trial. *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1352 (11th Cir. 2019). Where the issue is raised in a mandamus petition, however, relief may be denied without reaching the merits if the petitioner fails to establish a "'clear and indisputable'" right to relief. *First Nat'l Bank of Waukesha v. Warren*, 796 F.2d 999, 1006 (7th Cir. 1986) (Easterbrook, J.) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980)); *In re Don Hamilton Oil Co.*, 783 F.2d 151, 151-52 (8th Cir. 1986) (per curiam).

### SUMMARY OF ARGUMENT

Taxpayers have petitioned this Court for writs of mandamus, directing the Tax Court to conduct jury trials as to their liability for fraud penalties (but not the deficiencies in tax and other, non-fraud penalties at issue). In support of this request, taxpayers invoke the Seventh Amendment right to jury trials in suits at common law.

Taxpayers' request is meritless for four reasons, each of which is independently sufficient to deny their petitions.

First and foremost, the Tax Court is an Article I tribunal that possesses only those powers that Congress has specifically conferred upon it. Taxpayers have identified no authority for the Tax Court to conduct jury trials, and there is none. Because the only relief requested in taxpayers' petitions is the issuance of writs of mandamus directing the Tax Court to conduct jury trials, their petitions necessarily fail.

Second, the Seventh Amendment preserves the right to a jury trial only in suits at common law. Over 100 years of Supreme Court precedent confirm that there was no right at common law to bring suit against the sovereign and, therefore, no Seventh Amendment right to a jury trial in such a suit. Accordingly, controlling precedent holds that there is no Seventh Amendment right to a jury trial in a Tax Court petition, which is brought against the Commissioner in her official capacity.

Third, under the public rights exception to the Seventh Amendment, there is generally no right to a jury trial in matters concerning the collection of revenue. As a matter of precedent, history,

and logic, this encompasses not only the determination of taxpayers'
liability for income taxes, but also their liability for penalties that are
dependent upon, and calculated as a percentage of, their underreporting
and underpayment of tax.

Finally, assuming *arguendo* that taxpayers had a right to have a
jury determine their liability for civil fraud penalties arising out of the
failure to accurately report and pay taxes, that right has no application
here: taxpayers waived any such jury-trial right by passing up two
procedural options that would have allowed them to proceed in district
court and request a jury trial. Having chosen to forgo a district-court
forum and proceed in a pre-assessment, pre-payment forum where a
jury trial is unavailable, taxpayers must now take the bitter with the
sweet.

## ARGUMENT

### Taxpayers' mandamus petitions should be denied

### A. The Tax Court correctly held that it lacks authority to conduct a jury trial

Mandamus is an extraordinary remedy to compel a government
officer to perform a ministerial duty that the law plainly prescribes.
*United States v. Shalhoub*, 855 F.3d 1255, 1263-64 (11th Cir. 2017). As

discussed below, the Tax Court correctly held that it has no authority to provide taxpayers with a jury trial, much less a ministerial duty to do so. (HirschApdnx.221-222.) This Court should, therefore, deny taxpayers' petitions on this basis alone.

1. As taxpayers acknowledge (Pet. 23), the Tax Court is an Article I court established by Congress. I.R.C. §7441. Because it is "purely a creature of statute," *Smith's Estate v. Commissioner*, 638 F.2d 665, 669 (3d Cir. 1981), the Tax Court "possesses only those powers expressly conferred upon it by Congress" and "may exercise jurisdiction only pursuant to specific legislative enactments." *Maier v. Commissioner*, 360 F.3d 361, 363 (2d Cir. 2004) (citing *Commissioner v. McCoy*, 484 U.S. 3, 7 (1987)). Put another way, the Tax Court is a court of "strictly limited jurisdiction and powers." *Roberts v. Commissioner*, 175 F.3d 889, 895-96 & n.7 (11th Cir. 1999) (collecting cases); *accord Continental Equities, Inc. v. Commissioner*, 551 F.2d 74, 79-80 (5th Cir. 1977).

The text, structure, and history of the relevant statutes demonstrate that Congress has not authorized the Tax Court to conduct jury trials. Taxpayers identify no statute authorizing the Tax Court to

conduct jury trials, and the Commissioner and amicus agree there is none. (Amicus 2.) Given that the Tax Court possesses only those powers conferred upon it by Congress, this lack of authorization, standing alone, strongly supports the conclusion that no such authority exists. *See* 14 *Mertens Law of Fed. Income Taxation* §50:13 (Aug. 2024 Update) ("There is no jury trial in either the Tax Court or the Court of Federal Claims.") (footnote omitted); Boris I. Bittker & Lawrence Lokken, *Fed. Taxation of Income, Estates, and Gifts* ¶ 118.1 (2024).

Indeed, Tax Court petitions are filed against the Commissioner in her official capacity. *Mathes v. Commissioner*, 576 F.2d 70, 71 (5th Cir. 1978). Consistent with principles of sovereign immunity, any right to a jury trial in such a proceeding would therefore need to be "clearly and unequivocally" expressed by Congress. *Lehman v. Nakshian*, 453 U.S. 156, 162 (1981); s*ee infra*, pp. 17-21. Here, the provisions of the Internal Revenue Code establishing the Tax Court are, at most, silent as to its ability to conduct jury trials, *see* I.R.C. §7441, *et seq.*, which falls well short of a "clear and unequivocal" expression.

Moreover, multiple provisions of the Internal Revenue Code undermine any notion that the Tax Court is authorized to conduct jury

trials. For example, Section 7459(a) provides that, "upon any proceeding instituted before the Tax Court," the court shall make "[a] report upon [the] proceeding … and a decision thereon." I.R.C. §7459(a). The following provision, Section 7459(b), provides that "[i]t shall be the duty of the Tax Court and of each division to include in its report upon any proceeding its findings of fact or opinion or memorandum opinion." I.R.C. §7459(b). These directives *to the court* leave no room for findings or verdicts *by a jury*. *Swanson v. Commissioner*, 65 T.C. 1180, 1185 (1976). Furthermore, Section 7482(a)(1) provides that the courts of appeals shall review Tax Court decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." I.R.C. §7482(a)(1). It would be incongruous for juries to make findings and render verdicts following Tax Court trials, only to have the courts of appeals review those findings and verdicts as if they had been rendered without juries.

Other statutes reinforce the conclusion that the Tax Court lacks authority to conduct jury trials. The Jury Selection and Service Act ("Jury Act"), 28 U.S.C. §1861, *et seq.*, empowers courts to devise plans

for maintaining lists of potential jurors, summoning jury panels, and selecting jurors. The Jury Act applies only to Article III courts, not Article I courts. *E.g.*, 28 U.S.C. §§1863(a) ("Each United States district court shall devise and place into operation a written plan for random selection of grand and petit jurors …"), 1872 ("In all original actions at law in the Supreme Court against citizens of the United States, issues of fact shall be tried by a jury."). The fact that Congress established a comprehensive scheme for summoning and selecting jurors in Article III courts—but neither made that scheme applicable to, nor enacted a separate scheme for, the Tax Court—provides a firm basis to conclude that Congress did not intend for the Tax Court to conduct jury trials. *See Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1192-93 (11th Cir. 2011) (explaining the doctrine of *expressio unius*).

History leads to the same conclusion. Taxpayers have failed to identify any instance in which the Tax Court, or its predecessor the Board of Tax Appeals, conducted a jury trial. Nor is the Commissioner aware of any such instance. To the contrary, courts have consistently recognized that "[t]here is nothing in the statutory procedure established by Congress providing for a trial by jury in the Tax Court."

*Swanson*, 65 T.C. at 1184; *accord Mathes*, 576 F.2d at 71-72; *Funk v. Commissioner*, 687 F.2d 264, 266 (8th Cir. 1982); *Blackburn v. Commissioner*, 681 F.2d 461, 462 (6th Cir. 1982); *Dorl v. Commissioner*, 507 F.2d 406, 407 (2d Cir. 1974); *Olshausen v. Commissioner*, 273 F.2d 23, 27 (9th Cir. 1959).

2. In passing, taxpayers make two arguments in support of their position that the Tax Court can conduct jury trials. (Pet. 17, 23.) Neither is convincing.

First, taxpayers contend that, since none of the statutes delineating the contours of the Tax Court's authority "speak to the abrogation of" the ability to conduct a jury trial, this Court should construe those statutes as authorizing the Tax Court to do so. (Pet. 17.) This is precisely backward. The Tax Court "possesses only those powers expressly conferred upon it by Congress," *Maier*, 360 F.3d at 363, not all powers that Congress has failed to expressly take away from it. In any event, the clear implication of the relevant statutes is that Congress has denied the Tax Court the power to conduct jury trials.

Second, taxpayers contend that, because bankruptcy judges and magistrate judges can sometimes conduct jury trials, Tax Court judges

should be able to do so, too.  (Pet. 23.)  This contention badly misses the mark.

Bankruptcy judges "constitute a unit of the district court," 28 U.S.C. §151, and have authority to hear certain cases and proceedings referred to them by the district court, 28 U.S.C. §157(a). By statute, bankruptcy judges are empowered to exercise the district court's authority to conduct a jury trial in certain circumstances, but only "with the express consent of all the parties."  28 U.S.C. §157(e).[2]

Magistrate judges are appointed by the judges of the district court, 28 U.S.C. §631(a), and have authority to hear certain matters that are referred to them by a district court judge, 28 U.S.C. §636(b).  By statute, magistrate judges are empowered to exercise the district court's authority to conduct a jury trial, but only "[u]pon the consent of the parties."  28 U.S.C. §636(c)(1).

---

[2] Prior to the enactment of 28 U.S.C. §157(e), one court of appeals concluded that bankruptcy courts could conduct jury trials, notwithstanding the fact that "[t]he relevant statutory provision … offers almost no guidance." *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1402-04 (2d Cir. 1990).  The six other courts of appeals to consider the issue disagreed, holding that Congress had not, by its silence, conferred such authority on bankruptcy courts. *In re Clay*, 35 F.3d 190, 196-98 (5th Cir. 1994) (collecting cases).

Neither bankruptcy judges' nor magistrate judges' authority to conduct jury trials supports an extension of similar authority to Tax Court judges, where there is (i) no comparable delegation of authority from an Article III court and (ii) no comparable statutory authorization. Nor is there "consent of the parties" here, where the Commissioner opposes taxpayers' demands for jury trials in the Tax Court. *See Peretz v. United States*, 501 U.S. 923, 931-32 (1991) (citation and internal quotations omitted) (consent represents "[a] critical limitation" on magistrate judges' authority).

## B. The Tax Court correctly held that taxpayers have no constitutional right to a jury trial

The Seventh Amendment does not compel a jury trial where a taxpayer elects to file suit against the Government in the Tax Court to redetermine fraud penalties. (Hirsch.Apdnx.221-222.) The Seventh Amendment preserves the right to a jury trial in suits at common law:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

U.S. CONST. amend. VII. Taxpayers' Tax Court petitions fall outside the scope of the Seventh Amendment for two reasons, each of which is

sufficient to deny their petitions for mandamus. First, Tax Court petitions are suits against the federal government, and there is no common-law right to a jury trial in a suit against the sovereign. Second, taxpayers' pre-payment suits to redetermine the tax deficiencies and fraud penalties at issue are matters concerning the collection of revenue and therefore fall within the public rights exception to the Seventh Amendment.

> 1.  **There is no constitutional right to a jury trial in suits against the sovereign**

(a) "The United States, as sovereign, is immune from suit save as it consents to be sued … and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *accord F.A.A. v. Cooper*, 566 U.S. 284, 290-91 (2012). Sovereign immunity encompasses not only suits against the United States and its agencies, but also suits against government officers in their official capacity. *Lewis v. Clarke*, 581 U.S. 155, 162-63 (2017); *Segal v. Commissioner*, 177 F. App'x. 29, 30 (11th Cir. 2006).

Because there was no right at common law to bring a suit against the sovereign without the sovereign's consent, there was necessarily no

right to a jury trial in a suit against the sovereign without the sovereign's consent. *Lehman*, 453 U.S. at 160. Thus, "It has long been settled that the Seventh Amendment right to a trial by jury does not apply in actions against the Federal Government." *Id.* (citing *Glidden v. Zdanok*, 370 U.S. 530, 572 (1962); *Galloway v. United States*, 319 U.S. 372, 388-89 (1943); *McElrath v. United States*, 102 U.S. (12 Otto) 426, 440 (1880)).

Tax Court petitions are filed against the Commissioner in her official capacity and are, therefore, properly considered suits against the sovereign. *Mathes*, 576 F.2d at 71. Consequently, courts have uniformly held that taxpayers have no Seventh Amendment right to a jury trial in the Tax Court. *Id.* at 71-72; *Funk*, 687 F.2d at 266; *Blackburn*, 681 F.2d at 462; *Rowlee v. Commissioner*, 80 T.C. 1111, 1115 (1983) (collecting cases). The Tax Court's holding in this regard was manifestly correct. (Hirsch.Apdnx.221-222.)

(b) On appeal, taxpayers point out that many cases cited in the Tax Court's opinion "predate[ ] [two] recent Supreme Court decisions on the Seventh Amendment": *Tull v. United States*, 481 U.S. 412 (1987), and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989). (Pet. 27.)

This is irrelevant, as neither *Tull* nor *Granfinanciera* revisited, much less overturned, the Supreme Court's longstanding rule that the Seventh Amendment is inapplicable to suits against the sovereign. In *Tull*, the Court had no occasion to address sovereign immunity because the Government brought suit against a private party, not the other way around. 481 U.S. at 414. In *Granfinanciera*, the Court declined to address sovereign immunity because the issue was not raised below and had not been adequately briefed or argued. 492 U.S. at 38-40. And in cases post-dating *Tull* and *Granfinanciera*, the Supreme Court has reaffirmed that the Seventh Amendment is inapplicable to suits against the sovereign. *Osborn v. Haley*, 549 U.S. 225, 252 (2007); *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999).

Notwithstanding taxpayers' protestations to the contrary (Pet. 27-28), *Jarkesy* does not dictate a different result. As in *Tull*, the Supreme Court had no occasion to address sovereign immunity because it was the Government that brought an action against a private party. *Jarkesy*, 603 U.S. at 119.

Taxpayers attempt to muddy the waters by pointing to *Jarkesy*'s statement that "what matters is the substance of the suit, not where it is brought, who brings it, or how it is labeled." (Pet. 28 (quoting *Jarkesy*, 603 U.S. at 135).) However, this statement was made in the course of addressing the SEC's argument that "the public rights exception [to the Seventh Amendment] still applies in this case" because "the Government is the party prosecuting this action." *Jarkesy*, 603 U.S. at 135. The Supreme Court disagreed, noting that "we have never held that the presence of the United States as a proper party to the proceeding is … sufficient by itself to trigger the [public rights] exception." *Id.* (citation and internal quotations omitted). Thus, the immediately following statement that "what matters is the substance of the suit, not where it is brought, who brings it, or how it is labeled" plainly addressed the public rights exception (which is discussed in the following section). *Id.* The statement did not address, much less overrule *sub silentio*, more than a century of caselaw holding that the Seventh Amendment is inapplicable to suits against the sovereign. This Court should not indulge taxpayers' attempt to cherry-pick

language from *Jarkesy*, stripped from the context in which it appears, to manufacture their desired outcome.

Finally, taxpayers assert that sovereign immunity is inapplicable because they are challenging penalties sounding in fraud. (Pet. 28-29.) But suits against the Government involving allegations of fraud are subject to sovereign immunity, just like suits involving any other allegations. *E.g.*, *Omnipol, A.S. v. Multinational Def. Servs., Inc.*, 32 F.4th 1298, 1306-07 (11th Cir. 2022); *Ishler v. Internal Revenue*, 237 F. App'x. 394, 398 (11th Cir. 2007). And so long as a claim falls within the sovereign's immunity, the sovereign "may attach any conditions (including no right to trial by jury) to its consent" to be sued on that claim. *Ducharme v. Merrill-Nat'l Labs.*, 574 F.2d 1307, 1311 & n.7 (5th Cir. 1978); *accord Lehman*, 453 U.S. at 160. Taxpayers identify no authority to the contrary, and amicus ignores the sovereign immunity issue altogether.[3]

---

[3] Taxpayers observe that it is the Commissioner who bears the burden of proof once in court. (Pet. 28.) However, they never explain why that affects the sovereign immunity analysis. It does not.

### 2. There is no constitutional right to a jury trial in matters concerning the collection of revenue, which generally fall under the "public rights" exception to the Seventh Amendment

(a)  By its terms, the Seventh Amendment's right to a jury trial only applies to "Suits at common law."  U.S. CONST. amend. VII.  In determining what constitutes a suit at common law, and thus whether the Seventh Amendment potentially applies, the Supreme Court has long distinguished between matters concerning private rights and public rights.  *Jarkesy*, 603 U.S. at 127-28 (collecting cases).  Matters concerning private rights are those that a litigant has the right to have decided by an Article III court and, correspondingly, to which Seventh Amendment rights potentially attach.  *Id.*  Matters concerning public rights, by contrast, are those that "'historically could have been determined exclusively by [the executive and legislative] branches'" and to which Seventh Amendment rights do not attach.  *Id.* at 128 (quoting *Stern v. Marshall*, 564 U.S. 462, 493 (2011)).  After all, a litigant with no right to have a matter adjudicated in an Article III court necessarily has no right to have the matter heard by a jury.  *Id.*

Matters encompassed within the public rights exception to the Seventh Amendment include, among other things, immigration law,

administration of public lands, and granting of public benefits. *Jarkesy*, 603 U.S. at 129-30. Relevant here, the public rights exception also includes matters concerning the collection of revenue. *Id.* at 128-29. Indeed, such matters represent the heartland of the public rights exception, as they were the first category of public rights recognized by the Supreme Court and "flow[ ] from centuries-old rules concerning revenue collection by the sovereign" via summary, non-judicial proceedings. *Id.* at 128-29, 131 (citing *Murray's Lessee*, 59 U.S. at 275-76, 278, 280-82, 285).

These centuries-old rules, both in the United States and elsewhere, reflect the critical role that the collection of revenue plays in government and the attendant disruption that might follow if taxpayers were entitled, as a matter of right, to forestall payment pending judicial review. *Cheatham v. United States*, 92 U.S. (2 Otto) 85, 88-89 (1875); *see also Bull v. United States*, 295 U.S. 247, 259 (1935) ("taxes are the lifeblood of government, and their prompt and certain availability an imperious need"). Thus, "[i]t is within the undoubted power of Congress to provide any reasonable system for the collection of taxes and the recovery of them when illegal, without a jury trial," so long as due

process is satisfied.  *Wickwire v. Reinecke*, 275 U.S. 101, 105-06 (1927); *accord Jarkesy*, 603 U.S. at 128-29.

(b)  For as long as Congress has exercised its authority to lay and collect taxes under Article I, Section 8, it has backed those taxes up with civil penalties for taxpayers who fail to accurately report and pay their liabilities.  *Helvering v. Mitchell*, 303 U.S. 391, 400 (1938) ("the payment of fixed or variable sums of money" as a sanction has been "recognized as enforceable by civil proceedings since the original revenue law of 1789"); *Murray's Lessee*, 59 U.S. at 282.  Such penalties serve "as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud."  *Id.* at 401.

Civil tax penalties, including the fraud penalties at issue, share many of the same characteristics as the underlying taxes to which they relate.  They are generally "assessed, collected, and paid in the same manner as taxes."  I.R.C. §6665(a)(1); *see also* I.R.C. §6671(a).  They are typically dependent upon, and calculated as a percentage of, a taxpayer's underreporting or underpayment of tax.  *E.g.*, I.R.C. §§6651(a)(1), (f), 6663(a); *see also Mitchell*, 303 U.S. at 401-02

(addressing tax fraud penalty calculated as 50% of the deficiency in tax). And, like the taxes to which they relate, civil tax penalties ordinarily arise as a matter of law, separate and apart from the need for any formal assessment. *Polselli v. Internal Revenue Serv.*, 598 U.S. 432, 442 (2023) (taxes); *Allen v. United States*, 51 F.3d 1012, 1015 (11th Cir. 1995) (citing *Loftin & Woodard, Inc. v. United States*, 577 F.2d 1206, 1245-47 (5th Cir. 1978)) (penalties).

Given the close relationship between taxes and tax penalties, it is unremarkable that courts have treated them similarly with respect to taxpayers' entitlement to a jury trial. Over 100 years ago, the Supreme Court characterized as "settled" the proposition that Congress could impose taxes and "sanction their enforcement by reasonable money penalties … without the necessity of invoking the judicial power." *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 338-39 (1909). Amicus is correct (p. 21) that *Oceanic Steam* involved a customs penalty linked to immigration. However, amicus fails to acknowledge that the holding in that case was based on three prior Supreme Court cases involving tax penalties designed to discourage fraud and measured as a percentage of the importer's undervaluation of goods

subject to duty. *Oceanic Steam*, 214 U.S. at 338-39 (citing *Origet v. Hedden*, 155 U.S. 228 (1894); *Passavant v. United States*, 148 U.S. 214 (1893); *Bartlett v. Kane*, 57 U.S. (16 How.) 263 (1853)).

Thirty years after *Oceanic Steam*, in rejecting a taxpayer's claim that the IRS's assertion of a tax fraud penalty following his acquittal on related criminal charges violated the Fifth Amendment's prohibition against double jeopardy, the Supreme Court observed that "the determination of the facts upon which liability [for the penalty] is based may be made by an administrative agency instead of a jury." *Mitchell*, 303 U.S. at 402 & n.7. More recently, in discussing the public rights exception to the Seventh Amendment, the Supreme Court reiterated that "taxes may constitutionally be assessed and collected together with penalties, with the relevant facts in some instances being adjudicated only by an administrative agency." *Atlas Roofing Co., Inc. v. Occupational Safety and Health Review Comm'n*, 430 U.S. 442, 450 (1977) (citing *Phillips v. Commissioner*, 283 U.S. 589, 599-600 (1931), and *Murray's Lessee*, 59 U.S. at 284).

Courts of appeals have taken the Supreme Court at its word and held likewise. *E.g.*, *Walker v. United States*, 240 F.2d 601, 603-04 (5th

Cir. 1957); *Olshausen*, 273 F.2d at 27-28; *see also Funk*, 687 F.2d at 265-66 (sustaining, over taxpayers' objection, tax penalty determination made following bench trial); *Blackburn*, 681 F.2d at 461-62 (same); *Dorl*, 507 F.2d at 407 (same). This Court should do the same.[4]

### 3. Taxpayers' remaining arguments do not establish a constitutional right to a jury trial

Taxpayers hurry past the foregoing authority and argue that a different rule should apply to the fraud penalties at issue for four reasons. (Pet. 19-22, 24-26; *see* Amicus 3, 6-11, 14-17.) None withstands scrutiny.

(a) Taxpayers first argue that the portions of a Tax Court petition directed to redetermining penalty liability are akin to a common-law action in debt. (Pet. 24-25; *see* Amicus 7-11, 14-17.) This reflects a fundamental misunderstanding of both types of proceedings. For starters, in an action at debt, the creditor brings suit against the debtor; in a Tax Court petition, the debtor (taxpayer) brings suit against the

---

[4] A full history of the methods by which taxes have been determined and collected is beyond the scope of this brief, prepared under the expedited time constraints and compressed word limit applicable to mandamus petitions. Nonetheless, the foregoing cases remain good law, notwithstanding taxpayers' and amicus's apparent belief that they were wrongly decided.

-28-

creditor (the Commissioner). And as we explained at pp. 17-21, *supra*, that distinction is critical because a suit against the Commissioner in her official capacity runs headlong into sovereign immunity.

Furthermore, the essential characteristic of an action in debt is the plaintiff's ability to obtain a money judgment and the attendant rights of a judgment creditor. *Atlas Roofing*, 430 U.S. at 449. This is not possible in the Tax Court, which has authority to issue reports and decisions—not enter judgments. I.R.C. §7459(a). Thus, even if the Tax Court sustains the tax and penalty determinations in a notice of deficiency, the Government must bring a new suit in district court to obtain a judgment and acquire the rights attendant thereto. I.R.C. §§7401, 7402(a); *see United States v. Shanbaum*, 10 F.3d 305, 308 (5th Cir. 1994) (suit to obtain judgment for tax liabilities and penalties reflected in Tax Court decision).

Indeed, far from serving as a means for the Commissioner to obtain a money judgment, Tax Court petitions provide taxpayers with a pre-payment vehicle to forestall the assessment and collection of taxes and tax penalties, pending an adjudication. I.R.C. §6213(a). Such a vehicle did not exist until 1924, when Congress established the Board of

Tax Appeals. Revenue Act of 1924, ch. 234, §900, 43 Stat. 253, 336-38; *see also* Revenue Act of 1942, ch. 619, §504, 56 Stat. 798, 957 (reconstituting the Board of Tax Appeals as the Tax Court). Thus, Tax Court petitions bear no "similarity to an action for the collection of a debt," do not "involve any other rights and remedies of the sort traditionally enforced in an action at law," and have "no counterpart in actions at common law." *Swanson*, 65 T.C. at 1183-84 (citing *Olshausen*, *supra*).

(b) Next, taxpayers, joined by amicus (Pet. 25-26; Amicus 8-11, 14-17), note that a number of statutes enacted by early American Congresses and the British Parliament authorized the Government to collect certain tax penalties via an action in debt. *E.g.*, Whiskey Tax of March 3, 1791, ch. 15, §44, 1 Stat. 199, 209; Sugar Act of 1764, ch. 40, https://avalon.law.yale.edu/18th_century/sugar_act_1764.asp (last visited Apr. 1, 2025); Hearth Act of 1662, ch. XVIII, https://www.british-history.ac.uk/statutes-realm/vol5/pp390-393 (last visited Apr. 1, 2025). This is irrelevant for two reasons.

First, as we have just explained, Tax Court petitions are not akin to actions in debt. Thus, taxpayers' and amicus's renewed effort to

conflate the two proceedings "adds up to little more than saying that if my aunt were a man, she would be my uncle." *Florida v. Royer*, 460 U.S. 491, 528 (1983) (Rehnquist, J., dissenting).

Second, as evidenced by taxpayers' and amicus's reliance on statutes rather than caselaw, the Government's practice of collecting tax penalties via actions at debt—as opposed to summary, non-judicial proceedings—was a choice made by Congress and Parliament. *E.g.*, Whiskey Tax of March 3, 1791, ch. 15, §44; Sugar Act of 1764, ch. 40; Hearth Act of 1662, ch. XVIII. Those legislative decisions to voluntarily channel some tax penalties into actions at debt do not establish the broader point taxpayers must establish—that tax penalties must be recovered through common law actions, triggering the Seventh Amendment.[5] *See Olshausen*, 273 F.2d at 28 ("express [statutory] requirement that an action to recover [a particular] penalty be prosecuted as a common law action of debt" was not indicative of a

---

[5] By definition, a "common-law action" is "[a]n action governed by common law, *rather than by constitutional, statutory, equitable, or civil law.*" *Black's Law Dictionary* (12th ed. 2024) (emphasis added); *accord Jarkesy*, 603 U.S. at 127-28 (citations and internal quotations omitted) (considering whether a suit "is made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789").

broader proposition that "statutory penalties are always recovered in common law actions of debt").  Indeed, as amicus notes (pp. 9-10), Parliament also exercised the prerogative to enact statutes denying jury-trial rights for tax penalties, confirming that tax penalties do not automatically trigger the jury-trial right.  And we reiterate that the Supreme Court and courts of appeals have consistently held that taxpayers are not entitled to a jury trial as to their liability for tax penalties.  *Supra*, pp. 25-27.  At bottom, taxpayers' and amicus's attempt to establish the state of the common law by resort to statutory law is neither helpful nor appropriate.

(c)  Pivoting, taxpayers aver that tax fraud penalties are punitive. (Pet. 18-19, 22; *see* Amicus 6-7.)  However, controlling authority holds that such penalties are properly considered remedial where they safeguard the collection of revenue, reimburse the Government for the expense of investigation, and reimburse the Government for lost revenue.  *Mitchell*, 303 U.S. at 401 & n.4 (citing *Stockwell v. United States*, 80 U.S. 531 (13 Wall.) 547, 551 (1871)) (additional citations omitted); *Lee v. Commissioner*, 227 F.2d 181, 183 & n.4 (5th Cir. 1955); *accord Thomas v. Commissioner*, 62 F.3d 97, 100 (4th Cir. 1995) ("For

over fifty years, the [tax fraud penalty] has been regarded as remedial, rather than punitive, in nature.").

Characterizing tax fraud penalties as remedial makes sense because, unlike the penalties at issue in *Jarkesy*, 603 U.S. at 118, 123-24, such penalties are tied to the amount of tax underreported and underpaid, increase in relationship to the severity of that underreporting and underpayment, and are always remitted to the victim of the fraudulent conduct (*i.e.*, the Government). I.R.C. §§6651, 6663; *Mitchell*, 303 U.S. at 401 ("The remedial character of sanctions imposing additions to a tax has been made clear by this Court in passing upon similar legislation."); *Lee*, 227 F.2d at 183 (fraud penalties "are but civil administrative sanctions of a remedial character in aid of the assessment and collection of taxes"). In other words, such penalties are intended simply "to secure full compensation for interference with the rights of the United States." *Stockwell*, 80 U.S. at 551. And civil penalties that are "intended simply to extract compensation or restore the status quo" constitute an equitable remedy, rather than a legal

remedy to which Seventh Amendment rights potentially attach.[6] *Tull v. United States*, 481 U.S. 412, 422 (1987).

(d)  Finally, taxpayers contend that the requirements to establish liability for tax fraud penalties are akin to the requirements to establish common-law fraud.  (Pet. 19-22, 24; *see* Amicus 7, 11.)  This contention is unpersuasive.

According to taxpayers, *Jarkesy* stands for the proposition that, when a "civil penalty sounds in 'fraud,' the Seventh Amendment requires a jury to determine whether the Government has proven the fraud allegations."  (Pet. 1.)  This reductionist approach simplifies *Jarkesy* to the point of caricature.  In *Jarkesy*, the Supreme Court observed that the Securities Act, Securities Exchange Act, and Investment Advisors Act not only used the term "fraud," but also other related "common law terms of art."  603 U.S. at 125.  The Court also observed that the SEC had incorporated such common-law terms of art

---

[6] Of course, "all civil penalties have some deterrent effect." *Hudson v. United States*, 522 U.S. 93, 102 (1997).  But the fact "[t]hat a statute serves to deter future conduct does not automatically render it punitive, particularly where its overriding goal is remedial."  *Garner v. U.S. Dep't of Labor*, 221 F.3d 822, 827 & n.31 (5th Cir. 2000) (collecting cases).

into its rulemaking.  *Id.*  Based on these factors, the Court concluded that "Congress's decision to draw upon common law fraud created an enduring link between federal securities fraud and its common law ancestor."  And "when Congress transplants a common-law term, the old [Seventh Amendment] soil comes with it."  *Id.* (citation, internal quotations, and alteration omitted).

The factors upon which the Supreme Court relied in *Jarkesy* are absent here.  Apart from the word "fraud," taxpayers identify no related common-law terms of art in the relevant statutes.  *See* I.R.C. §§6651(f) (penalty where taxpayer's failure to file "is fraudulent"), 6663(a) & (b) (penalty where taxpayer's underpayment "is due to fraud" or "attributable to fraud"), 7454(a) (addressing the burden of proof "[i]n any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax").  Nor do taxpayers identify any related common-law terms of art in the relevant Treasury Regulations.

Indeed, common-law fraud claims require a party to establish (i) a misrepresentation or omission, (ii) materiality, (iii) reliance, (iv) causation, and (v) injury.  *Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299, 1306 (11th Cir. 2023).  By contrast, for a court to sustain

tax fraud penalties, the Commissioner must establish that (i) the taxpayer intended to evade taxes that he knew or believed to be owing (ii) by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. *Korecky v. Commissioner*, 781 F.2d 1566, 1568 (11th Cir. 1986). Noticeably absent is any requirement that the Commissioner demonstrate reliance, causation, etc. *See Acker v. Commissioner*, 26 T.C. 107, 111 (1956) ("Here, we are not dealing with common law fraud, but rather with the statutory concept of 'fraud with intent to evade tax...'"). Thus, where Congress did *not* transplant the common-law meaning of fraud into the provisions governing tax fraud penalties, "no common law soil [comes] with them."[7] *Jarkesy*, 603 U.S. at 136-37 (citing *Granfinanciera, supra*).

---

[7] Amicus posits that the requirements to establish accuracy-related penalties are akin to the requirements to establish common-law negligence. (Amicus 3, 7, 11-12.) We do not address this argument, as taxpayers have never sought jury trials as to those penalties. Nor we do address amicus's other arguments, likewise not raised by taxpayers and outside the scope of their petitions, that it is unconstitutional for (i) the IRS to assess tax penalties or pursue administrative collection thereof and (ii) the Tax Court to adjudicate such penalties. (Amicus 2-4, 22-23.) We note only that, in light of controlling precedent that civil tax penalties arise as a matter of law (*supra*, p. 25), the implication of amicus's position seems to be that a taxpayer must ordinarily pre-pay his tax penalty liability to obtain judicial review thereof.

C.   **At all events, the Tax Court correctly held that taxpayers waived any jury-trial right they may have had**

Assuming *arguendo* that taxpayers had a right to a jury trial under the Seventh Amendment, the Tax Court correctly held, in the alternative, that they waived that right by choosing to file suit in a forum where jury trials are unavailable.  (Hirsch.Apdnx.222.)  Even where the right to a jury trial exists under the Seventh Amendment, a litigant can waive that right.  *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848-49 (1986); *Sec'y, U.S. Dep't of Labor v. Preston*, 873 F.3d 877, 886 (11th Cir. 2017).  Such a waiver can take various forms, including failing to timely request a jury trial in a forum where one is available, *LaMarca v. Turner*, 995 F.2d 1526, 1545 (11th Cir. 1993), agreeing to arbitration, *Bakrac, Inc. v. Villager Franchise Sys., Inc.*, 164 F. App'x. 820, 823-24 (11th Cir. 2006), or choosing to settle or not bring suit at all, *In re Clay*, 35 F.3d at 196.

A litigant can also waive his right to a jury trial by choosing to proceed in a forum where none is available.  *Ex parte Bakelite Corp.*, 279 U.S. 438, 453-54 (1929) (citing *McElrath*, 102 U.S. at 440) (Court of Federal Claims); *Olshausen*, 273 F.2d at 27 (Tax Court).  This is

because a litigant that "avails himself of the privilege of suing the government in the special court organized for that purpose … must do so subject to the conditions annexed by the government to the exercise of the privilege." *McElrath*, 102 U.S. at 440.

Here, taxpayers received notices of deficiency that determined deficiencies in income tax and tax penalties. (Hirsch.Apdnx.99-220.) At that point, they—like any other taxpayer in receipt of such notices—had two main options to contest the deficiencies and penalties. First, taxpayers could petition the Tax Court to redetermine the liabilities, with the advantage of not having to pre-pay the amount due. I.R.C. §6213(a). If taxpayers chose this option, their liabilities would be decided by a Tax Court judge following a bench trial. *Supra*, pp. 9-14. Taxpayers are currently availing themselves of this option. Second, taxpayers could forgo pre-assessment review in the Tax Court and instead pay the liabilities reflected in the notices of deficiency; submit administrative refund claims; and, if the IRS denied their claims or six months elapsed without a decision thereon, file refund suits in district court. I.R.C. §§6532(a)(1), 7422(a); 28 U.S.C. §1346(a)(1). If taxpayers chose this option, they would have had—by statute—the right to

—

request that their liabilities be decided by a jury.[8] 28 U.S.C. §2402; *Phillips*, 283 U.S. at 599 n.9.

Situated within this framework, controlling precedent provides that, where a taxpayer has the option of pursing a refund suit in district court and requesting a jury trial but instead "elects to bring his suit in the Tax Court" where no jury trial is available, he has not been deprived of any "right, statutory or constitutional, to a trial by jury." *Mathes*, 576 F.2d at 71-72; *accord Blackburn*, 681 F.2d at 462; *Olshausen*, 273 F.2d at 27. Or, as the Tax Court here succinctly put it in holding that taxpayers waived any jury-trial right they may have had, "Any deprivation of the jury-trial right was due to [taxpayers'] own act." (Hirsch.Apdnx.222 (quoting *Swanson*, 65 T.C. at 1181).) Taxpayers fail to challenge this holding, and this Court should,

---

[8] Alternatively, taxpayers could have chosen to have their liabilities decided by a Court of Federal Claims judge following a bench trial, 28 U.S.C. §1346(a)(1), or waited for the Government to bring a district-court suit to reduce the liabilities to judgment and requested a jury trial. *See United States v. McMahan*, 569 F.2d 889, 890-92 (5th Cir. 1978) (en banc) (suit to obtain "a personal judgment" for unpaid taxes was akin to "a suit at common law for debt for the collection of taxes").

therefore, treat it as conceded.  *See Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1307 (11th Cir. 2012).

The closest taxpayers come to addressing the Tax Court's waiver holding is their passing claim that "Congress assigned" their cases to the Tax Court.  (Pet. 23-24.)  However, such cursory treatment is insufficient to properly place this issue before the Court.  *See Cont'l Tech. Servs., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991) (per curiam).  In any event, it was taxpayers—not Congress, the Commissioner, or anyone else—that made the choice to proceed in a non-jury forum when an alternative, jury forum was available. *Compare Jarkesy*, 603 U.S. at 116-18, 140 (finding Seventh Amendment violation where the SEC unilaterally chose a non-jury forum).

## CONCLUSION

The petitions for writs of mandamus should be denied.

Respectfully submitted,

/s/ Geoffrey J. Klimas

MICHAEL J. HAUNGS       (202) 514-4343
GEOFFREY J. KLIMAS      (202) 307-6346
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*
  *Appellate.TaxCivil@usdoj.gov*
  *Geoffrey.J.Klimas@usdoj.gov*

APRIL 16, 2025

# CERTIFICATE OF COMPLIANCE

## With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

Check the appropriate box in section 1, and check the box in section 2.

### 1. Type-Volume

[X]    This document complies with the word limit of FRAP 32(a)(7)(B) because, excluding the parts of the document exempted by FRAP 32(f), this document contains 7,798 words.

**or**

[ ]    This brief complies with the line limit of FRAP ____ because, excluding the parts of the brief exempted by FRAP 32(f) and ____, this brief uses a monospaced typeface and contains ____ lines of text.

### 2. Typeface and Type-Style

[X]    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).

(s)   _/s/ Geoffrey J. Klimas_

Attorney for  _Commissioner of Internal Revenue_

Dated:  _____April 16, 2025_