# In the United States Court of Appeals for the Eleventh Circuit

In Re:  HERBERT HIRSCH and BONITA HIRSCH,
Petitioners;

In Re: HARVEY BIRDMAN and DIANE BIRDMAN,
Petitioners,

versus

THE COMMISSIONER OF INTERNAL REVENUE,
Respondent.

On Petition for a Writ of Mandamus to the United States Tax Court
Case Nos. 28898-10, 5819-10, & 5821-10;
Case Nos. 28897-10, 5816-10, & 5817-10
Hon. Patrick J. Urda, Tax Court Judge, Presiding

–––––––––––––––––––––––––––––––––––––––––––––––

## REPLY RE: PETITION FOR A WRIT OF MANDAMUS

–––––––––––––––––––––––––––––––––––––––––––––––

Joseph A. DiRuzzo, III
Daniel M. Lader
MARGULIS GELFAND DIRUZZO & LAMBSON
401 East Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
954.615.1676 (o)
954.827.0340 (f)

*Counsel for the Petitioners*

# DISCLOSURE STATEMENT

The undersigned counsel for Petitioners pursuant to Local Rule 26.1-1 certifies that, to the best of Petitioners' knowledge, the following is a complete list of interested persons:

**Judges Below:**

Hon. James S. Halpern

Hon. Julian I. Jacobs

Hon. Michael B. Thornton

Hon. Patrick J. Urda

Hon. Juan F. Vasquez

**Parties:**

Herbert Hirsch

Bonita Hirsch

Harvey Birdman

Diane Birdman

Commissioner of Internal Revenue

**Amicus:**

Center for Taxpayer Rights

**Attorneys for the Government:**

Michael Von Krogh Foster, II

Rebecca Dance Harris

William W. Kiessling

Monica A. Kolovrat

Brian A. Pfeifer

Derek P. Richman

Geoffrey J. Klimas

Michael J. Haungs

**Attorneys for the Petitioners:**

Jennifer Correa Riera

Joseph A. DiRuzzo, III

Mitchell S. Fuerst (deceased)

Andrew S. Ittleman

Daniel M. Lader

Christopher J. Rajotte

**Attorneys for the Amicus:**

Gray Proctor

Michael Todd Welty

Andrew Weiner

\*\*\*

There are no publicly traded companies that own 10% or more or any interest of any party to the instant litigation.

# TABLE OF CONTENTS

DISCLOSURE STATEMENT..................................................................... i

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES...................................................................... iv

INTRODUCTION................................................................................... 1

REPLY ARGUMENT .............................................................................. 2

    I.   THE TAX COURT CAN CONDUCT A JURY TRIAL............................................. 2

    II.  THE GOVERNMENT'S ASSERTION OF CIVIL FRAUD SEEKS A LEGAL REMEDY OF MONETARY PENALTIES, WHICH IS SUBJECT TO THE SEVENTH AMENDMENT GUARANTEE TO A JURY TRIAL.................................................................. 7

       A.   The Seventh Amendment Applies to Fraud Penalties............................... 7

       B.   Civil Tax Fraud Penalties are Analogous to Common Law Fraud. .......... 11

       C.   The Fact That, in General, There is No Constitutional Right to a Jury Trial Against the Sovereign Only Tells Half of Our History.............................. 14

       D.   Civil Tax Fraud Penalties are at Least Partially Punitive, Not Wholly Remedial, No Precedent Holds Otherwise, and they Cannot Fall Under the Public Rights Doctrine........................................................................ 17

    III. NEITHER A DISTRICT COURT REFUND SUIT NOR A GOVERNMENT ACTION TO REDUCE ASSESSMENT TO JUDGMENT IS A SUBSTITUTE THAT UPHOLDS THE SEVENTH AMENDMENT. ..................................................................... 23

CONCLUSION...................................................................................... 28

CERTIFICATE OF COMPLIANCE RE: WORD COUNT .................................... 29

CERTIFICATE OF SERVICE .................................................................. 29

# TABLE OF AUTHORITIES

**Cases**

*Asinor v. D.C.*, 111 F.4th 1249 (D.C. Cir. 2024) ......................................... 18

*AT&T, Inc. v. Fed. Commc'ns Comm'n*, __ F.4th __, 2025 WL 1135280 (5th Cir. Apr. 17, 2025) .................................................................................... passim

*Austin v. United States*, 509 U.S. 602 (1993) ............................................... 20

*City of Philadelphia v. Collector*, 75 U.S. 720 (1866) .................................... 15

*Flora v. United States*, 362 U.S. 145 (1960) .......................................... 14, 15

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) .................................... 8

*Helvering v. Mitchell*, 303 U.S. 391 (1938) .................................................. 17

*Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518 (11th Cir. 1991) ..................... 16

*Hughes v. Priderock Cap. Partners, LLC.*, 812 F. App'x 828 (11th Cir. 2020) ............. 15

*Hyde Props. v. McCoy*, 507 F.2d 301 (6th Cir. 1974) ................................. 9, 10

*I.N.S. v. Chadha*, 462 U.S. 919 (1983) .......................................................... 3

*Marbury v. Madison*, 5 U.S. 137 (1803) ........................................................ 3

*Marsh v. Chambers*, 463 U. S. 783 (1983) .................................................... 16

*McGirt v. Oklahoma*, 591 U.S. 894 (2020) ................................................... 16

*Mohamed v. Comm'r*, T.C. Memo. 2013-255, 2013 WL 5988943 (2013) ........... 13, 21

*N.L.R.B. v. Noel Canning*, 573 U.S. 513 (2014) ......................................... 2, 3

*New York Tr. Co. v. Eisner*, 256 U.S. 345 (1921) ....................................... 5, 14

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325 (2018) ......... 22

*Pernell v. Southall Realty*, 416 U.S. 363 (1974) ............................................. 9

*Robert C. Herd & Co. v. Krawill Mach. Corp.*, 359 U.S. 297 (1959) ................... 4

*Ross v. Bernhard*, 396 U.S. 531 (1970) .................................................... 9, 11

*Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109 (2024) ........................... passim

*Soldal v. Cook County*, 506 U.S. 56 (1992) ...................................................... 18

*Thomas v. Comm'r*, 62 F.3d 97 (4th Cir. 1995) ............................................... 17

*Toth v. United States*, 143 S. Ct. 552, *reh'g denied*, 143 S. Ct. 2604 (2023) ........... 21, 22

*United States v. Anderson*, 269 U.S. 422 (1926) ............................................ 25

*United States v. Schwarzbaum*, 127 F.4th 259 (11th Cir. 2025) ......................... passim

*United States v. Shanbaum*, 10 F.3d 305 (5th Cir. 1994) ............................... 26, 28

*United States v. Stein*, 881 F.3d 853 (11th Cir. 2018) .................................. 5, 6, 7

*United States v. Texas*, 507 U.S. 529 (1993) .................................................. 4

*United States v. White*, 466 F.3d 1241 (11th Cir. 2006) ................................. 27

## Statutes

26 U.S.C. § 6213(c) ...................................................................................... 27

26 U.S.C. § 6330(c)(2)(B) ........................................................................ 24, 27

26 U.S.C. § 7454(a) ................................................................................. 13, 24

28 U.S.C. § 1346(a)(1) ................................................................................. 23

28 U.S.C. § 2402 .......................................................................................... 23

Revenue Act of March 2, 1867, 15 Stat. 471 .............................................. 16

Whiskey Tax of March 3, 1791, 1 Stat. 199 ............................................... 15

## Other Authorities

A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ............... 4

Bruce L. Hay, *Allocating the Burden of Proof*, Indiana Law Journal: Vol. 72; Iss. 3, Article 2 (1997) .................................................................................................... 25

## Rules

Fed. R. Civ. P. 38(a) ................................................................................... 3, 9

Tax Ct. R. 1(b) ............................................................................................ 3

Tax Ct. R. 142(b) .................................................................................. 13, 24

## INTRODUCTION

When reading the Government's brief, it is easy to lose sight of one fundamental premise: in June 2024, the Supreme Court held that one who is "facing a fraud suit has the right to be tried by a jury of his peers before a neutral adjudicator." *Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109, 140 (2024). This was true in the SEC context even though the SEC had a statutory option to utilize non-jury trials to adjudicate civil penalties imposed by the Executive Branch just as the Tax Court exclusively utilizes non-jury trials to adjudicate civil penalties imposed by the IRS.

Indeed, where the Government seeks to exact a fraud penalty in any context, the right to a jury trial *prior* to the penalty having to be paid cannot —and does not— turn on whether the person may theoretically have some recourse after the penalty is paid. This is because, in this country, the Seventh Amendment right to a jury trial is not pay-to-play: before having to pay a penalty to the Government based on alleged fraud, a taxpayer has the constitutional right to a jury trial. *See id.*

Thus, while the Government's brief takes a scattershot approach in an attempt to complicate what is, at its core, a straightforward issue resolved by the Supreme Court 11 months ago, the bottom line remains: before the Government can require the payment of a civil fraud penalty, it has to prove a person's liability for the penalty *to a jury.*

REPLY ARGUMENT

## I. THE TAX COURT CAN CONDUCT A JURY TRIAL.

The Government argues that this Court cannot remand with instructions to provide a jury trial because it can "identify no statute authorizing the Tax Court to conduct jury trials[.]" Opp. at 10-11. But the Government failed to identify any statute *precluding* the Tax Court from conducting jury trials.[1] The Government improperly inverts the analysis —placing federal statutes above the Constitution and asking this Court to infer that the absence of a statute supersedes the presence of the Seventh Amendment and the common law. That line of reasoning should be rejected out of hand.

There can be no doubt that the Seventh Amendment entitles the American public to a jury trial, and "[t]he troublesome need to do so is not a bug to be fixed by this Court, but a calculated feature of the constitutional framework." *N.L.R.B. v. Noel Canning*, 573 U.S. 513, 601 (2014) (Scalia, J., concurring). Indeed, the Founders "embedded the right in the Constitution, securing it against the passing demands of expediency or convenience." *Jarkesy*, 603 U.S. at 122 (cleaned up). This decision was "consciously made by men who had lived under a form of government that permitted

---

[1] *See, e.g.,* Opp. at 11 ("the provisions of the Internal Revenue Code establishing the Tax Court are, at most, silent as to its ability to conduct jury trials.").

arbitrary governmental acts to go unchecked." *Noel Canning*, 573 U.S. at 602 (Scalia, J., concurring) (quoting *I.N.S. v. Chadha*, 462 U.S. 919, 959 (1983)). And "it is a general and indisputable rule, that where there is a legal right, there is also a legal remedy[.]" *Marbury v. Madison*, 5 U.S. 137, 163 (1803) (citation omitted).[2] It follows that the Tax Court can convene a jury when constitutionally required. Petitioners have proposed the modest remedy of requiring a jury to determine solely the issue of fraud liability for each taxable year. This Court should find that there is no barrier preventing that relief.

In any event, the Federal Rules of Civil Procedure provide that "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate." Fed. R. Civ. P. 38(a). And when the Tax Court's "Rules provide no governing procedure, the Court or the Judge before whom the matter is pending may prescribe the procedure, giving particular weight to the Federal Rules of Civil Procedure to the extent that they are suitably adaptable to govern the matter at hand." Tax Ct. R. 1(b).

Tax Court proceedings are perfectly amenable with the Seventh Amendment as Petitioners have demanded, which is a proper remedy not requiring, e.g., striking

---

[2] This principle is known in Latin as the maxim *ubi jus, ibi remedium* – meaning "where there is a right, there is a remedy."

the entire system as unconstitutional. The Federal Rules of Civil Procedure presumptively applies and there has not been any suggestion that they are not suitably adaptable to govern the matter at hand. This Court should find that, to the extent the common law or Seventh Amendment affords Petitioners the right to a jury trial, remand with instructions for the Tax Court to conduct it is appropriate.

Moreover, the fact that the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861, et seq. (the "Jury Act") only applies to district courts is of no moment. Courts have summoned jurors under their inherent authority long before the Jury Act, and the absence of an applicable juror act would not prevent a court from providing a jury trial when required.

Additionally, canons of statutory construction require that "statutes in derogation of the common law are to be strictly construed." A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 318 (2012) (citing, *inter alia, Robert C. Herd & Co. v. Krawill Mach. Corp.*, 359 U.S. 297, 304 (1959)). *Accord United States v. Texas*, 507 U.S. 529, 534 (1993) ("longstanding is the principle that statutes which invade the common law are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident.") (cleaned up). But there is nothing in the Internal Revenue Code that expressly derogates the common law right to a jury trial for an action at law.

"Upon this point a page of history is worth a volume of logic."  *New York Tr. Co. v. Eisner*, 256 U.S. 345, 349 (1921).

"In the decades before the American Revolution, Parliament developed procedures to enforce its revenue measures by evading colonial juries."  *United States v. Stein*, 881 F.3d 853, 859 (11th Cir. 2018) (*en banc*) (Pryor, J. concurring) (citation omitted). "England had struggled to enforce its trade laws in the colonies, and colonial officials in America blamed local juries for refusing to be impartial in customs disputes." *Id.* (Pryor, J. concurring) (citation omitted). "In response, Parliament expanded the jurisdiction of admiralty courts, which sat without juries, to include trade cases that would have been tried by a jury in England." *Id.* (Pryor, J. concurring) (citation omitted).  "Colonial Americans vehemently objected to these measures, and the denial of the right to a jury in tax cases became a chief complaint animating the American Revolution."  *Id.* (Pryor, J. concurring).  Indeed, "[i]n the Declaration of Independence, Americans cited the deprivation in many cases, of the benefit of Trial by Jury as one of the 'Usurpations' committed by King George III that they would no longer tolerate."  *Id.* at 860 (Pryor, J. concurring) (cleaned up, citing The Declaration of Independence paras. 2, 20 (1776)).  "The failure to guarantee the right to a jury trial in civil cases almost prevented the ratification of the Constitution." *Id.* (Pryor, J. concurring).  "The defenders of the Constitution prevailed in the ratification debates

only after promising an amendment that guaranteed the right to trial by jury in civil cases." *Id.* (Pryor, J. concurring) (citation omitted).

Thus, the Tax Court's denial of the Petitioners' Seventh Amendment right "oust[s] the jury from its historical role in the exact context—the enforcement of tax laws—that prompted the founding generation to adopt the Seventh Amendment in the first place." *Id.* (Pryor, J. concurring). Just as the Founders required a jury trial for the enforcement of tax laws at the Founding, so too should this Court.

However, this Court could resolve this case on much narrower grounds because "[a]ctions by the Government to recover civil penalties under statutory provisions ... historically had been viewed as a type of action in debt requiring trial by jury." *Jarkesy,* 603 U.S. at 122 (cleaned up). *See also id.* at 125 (civil penalties are "a type of remedy at common law that could only be enforced in courts of law.") (citation omitted).

Thus, the question is not whether Congress allowed the Tax Court to provide a jury trial when the Government brings fraud claims. Instead, the question is whether Congress has expressly derogated the common law right to a jury trial when the Government seeks to recover civil penalties for fraud. The answer to that question is "no" and, consequently, the Petitioners are entitled under the common law and the Seventh Amendment to have a jury determine the Government's fraud allegations,

which was available at the Founding.  *See Stein*, 881 F.3d at 859-60 (Pryor, *J.* concurring).

## II.  THE GOVERNMENT'S ASSERTION OF CIVIL FRAUD SEEKS A LEGAL REMEDY OF MONETARY PENALTIES, WHICH IS SUBJECT TO THE SEVENTH AMENDMENT GUARANTEE TO A JURY TRIAL.

### A.  The Seventh Amendment Applies to Fraud Penalties.

The Government emphasizes that a Tax Court petition initiates a suit against the federal government unknown to the common law. *See, e.g.,* Opp. at 16-18. But it ignores that "what matters is the substance of the suit, not where it is brought, who brings it, or how it is labeled." *Jarkesy*, 603 U.S. at 135. Clearly, the substance of the instant issue is that the Government seeks to impose civil fraud penalties to be recovered from Petitioners. Despite that the Government does so administratively and then Petitioners initiate the action in the Tax Court, it makes no difference "who brings it, or how it is labeled." *Id.*

In substance, Petitioners are defendants against the Government's assertion of fraud and the associated monetary penalties. Petitioners are not seeking any recovery from the Government. Nor are Petitioners demanding a prepayment jury trial on the redetermination of tax. Rather, despite that the statutory procedure results in a caption, *Taxpayers v. Government*, covering both the tax and penalty issues together, the

sole underlying issue here is that the Government seeks to recover monetary fraud penalties from Petitioners.

The Government ignores the actual *claims* at issue, framing this as a suit against the sovereign —*but it is the fraud penalty claims by the Government that are at issue*. And it is apparent that while "suits against the Government involving allegations of fraud are subject to sovereign immunity, just like suits involving any other allegations" against the Government, that is inapposite here. Opp. at 21. This case does not involve any allegations against the Government; instead, the Government is trying to obtain monetary penalties by alleging fraud against Petitioners. Sovereign immunity does not apply when the Government is making allegations of fraud, but the Seventh Amendment does because the Government's "legal claims are not magically converted into equitable issues by their presentation to a court of equity, *nor can Congress conjure away the Seventh Amendment by mandating that traditional legal claims be brought there* or taken to an administrative tribunal." *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 52 (1989) (cleaned up, emphasis added).

The Seventh Amendment does not disappear because a taxpayer is labeled "petitioner" rather than "defendant." Like in a direct judicial action that would be labeled, *Government v. Taxpayers*, the Government bears the burden of proof to prove its allegations of fraud by clear and convincing evidence and,

[f]or the purpose of evaluating this constitutional right, *it is important to distinguish between a device used to prosecute a case and the underlying issue to be resolved by the litigation.* The historical characterization of *the former is no longer determinative of the jury claim.* "The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action."

*Hyde Props. v. McCoy*, 507 F.2d 301, 305 (6th Cir. 1974) (emphasis added, quoting *Ross v. Bernhard*, 396 U.S. 531, 538 (1970)).

Whether a redetermination of tax action is equitable is of no moment. Whether imposition of civil tax fraud penalties is equitable or legal is because the Seventh Amendment "right adhere[s] not only to traditional common law proceedings but also to other cases requiring the ascertainment and determination of legal rights." *Id.* (citation omitted). And regardless of whether the action actually existed in England in 1791, a jury trial is required where "the action involves rights and remedies of the sort traditionally enforced in an action at law, rather than in an action in equity or admiralty." *Pernell v. Southall Realty,* 416 U.S. 363, 375 (1974). The civil tax fraud penalties the Government asserts impose a decidedly legal, not equitable remedy: therefore, the Seventh Amendment remains inviolate. *Accord* Fed. R. Civ. P. 38(a).

Over fifty years ago, the Sixth Circuit explained the analysis in a case where

the underlying controversy was whether or not there had been a fraudulent conveyance of two promissory notes. To distinguish between legal and equitable claims, this Court has looked to the three factors set forth in the *Ross* decision—first, the pre-merger custom with reference to

such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries.

*Hyde*, 507 F.2d at 305 (cleaned up).

And that court explained that the relief sought is typically the deciding factor especially in the fraud context because "[q]uestions involving fraud cannot be classified from custom as solely legal or solely equitable and, as a result, the nature of the remedy sought becomes considerably more important in resolving the right to jury trial." *Id.* This was confirmed by the High Court in *Jarkesy*, explaining that, "[s]ince some causes of action sound in both law and equity,... the remedy [i]s the 'more important' consideration." 603 U.S. at 123 (citing *Tull v. United States*, 481 U.S. 412, 421 (1987)). So, for example, "[i]f a fraudulent conveyance action is brought to set aside a transfer, such a remedy is cognizable only in equity. However, where the legal relief is adequate, it is an action at law and the right to jury adheres." *Hyde*, 507 F.2d at 305.

Here, the Government is not simply seeking to set aside the actions it deems fraudulent and impose the amount of tax that would have otherwise been due but *also* to impose additional sums *as penalties* that would not otherwise be owed. That is a legal claim seeking a legal remedy, to punish and deter —not to restore the status quo— and the procedural "device used to prosecute" the fraud penalties is not "determinative of the jury claim." *Id.* The Seventh Amendment applies in full.

To be sure, it makes no difference that the fraud claims are related to the underlying tax issues:

> where equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims. *The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action.*

*Ross*, 396 U.S. at 537–38 (emphasis added).

This Court should readily conclude the same as the Supreme Court did in *Ross.*

## B.      Civil Tax Fraud Penalties are Analogous to Common Law Fraud.

The Government splits hairs to argue that tax fraud is not really fraud —that it is so distinct from common-law fraud as to bear no relationship that establishes tax fraud penalties as analogues to common law actions at debt. That suggestion is made of whole cloth and dismisses the Supreme Court's clear guidance.

The Fifth Circuit, after the High Court's affirmance in *Jarkesy*, had occasion to consider a similar suggestion in another context challenging a "Federal Communications Commission forfeiture order. In an internal proceeding, the Commission found that AT&T violated section 222 of the Telecommunications Act by mishandling customer data and fined the company $57 million." *AT&T, Inc. v. Fed. Commc'ns Comm'n*, __ F.4th __, 2025 WL 1135280, at *1 (5th Cir. Apr. 17, 2025).

Applying the Supreme Court's reasoning, the Fifth Circuit swiftly rejected the Government's position:

> The Commission also points out that, unlike the securities laws in *Jarkesy*, section 222 does not borrow common law terms like "negligence" or "reasonable care." That is partially true—the scheme does not use the term "negligence" but does speak of "reasonable measures"—but in any event it is not determinative. Yes, a statute's borrowing common law terms may show its kinship to a common law action. The key inquiry, though, is not what terminology the statute uses but whether the statute "targets the same basic conduct" as the common law claim. The answer here is yes: section 222 action targets a carrier's negligence in handling customer data.

*Id.* at *6 (cleaned up, quoting *Jarkesy*, 603 U.S. at 125).

Here, the Government's argument that civil tax fraud does not follow the exact elements required as common law fraud misses the mark. Not only did Congress deliberately use "fraud" and other common law terms of art in the tax laws, but "the statute targets the same basic conduct as the common law claim" of fraud. *Id.* (cleaned up).

> In sum, the civil penalties in this case are designed to punish and deter, not to compensate. They are therefore a type of remedy at common law that could only be enforced in courts of law.... The close relationship between the causes of action in this case and common law fraud confirms that conclusion. Both target the same basic conduct: misrepresenting or concealing material facts.

*Jarkesy*, 603 U.S. at 125.

The Government's recitation of common-law elements of fraud —(i) a misrepresentation or omission, (ii) materiality, (iii) reliance, (iv) causation, and (v) injury"— Opp. at 34, does not sever tax fraud at issue here from its common-law ancestor. There exists a "close relationship between the causes of action in this case and common law fraud[,]" *Jarkesy*, 603 U.S. at 125, including that the Government has the burden to prove tax fraud by clear and convincing evidence, 26 U.S.C. § 7454(a); Tax Ct. R. 142(b). And, most importantly, "[b]oth target the same basic conduct: misrepresenting or concealing material facts." *Jarkesy*, 603 U.S. at 125. *See, e.g., Mohamed v. Comm'r*, T.C. Memo. 2013-255, 2013 WL 5988943, at *8 (2013) ("Section 6663(a) imposes a fraud penalty for a knowing misrepresentation of the truth in order to evade tax. The penalty is imposed only if a taxpayer files a return and only if, on that return, the taxpayer fraudulently (knowingly and with the intent to evade tax) shows less than (misrepresents) the amount of the tax due.").[3]

Leaving no doubt, "*Jarkesy* explained, the statutory action need not be 'identical' to a common law analogue[;]" rather, "[a]ll that is needed is a 'close relationship,' and

---

[3] The lack of explicit reliance and causation elements are inherent in the tax administration scheme of self-reporting. Put differently, the necessary filing of a fraudulent return and the Government's processing of it are *per se* causation and reliance.

section 222 satisfies that requirement[,]" as do the civil tax fraud penalties asserted

here. *AT&T*, 2025 WL 1135280, at *6 (quoting *Jarkesy*, 603 U.S. at 126).

The result in *Jarkesy* is not distinguishable:

> That is not to say that federal securities fraud and common law fraud are identical. In some respects, federal securities fraud is narrower.... In other respects, federal securities fraud is broader.... Nevertheless, the close relationship between federal securities fraud and common law fraud confirms that this action is legal in nature.

*Jarkesy*, 603 U.S. at 126 (cleaned up).

Ultimately, a civil tax fraud penalty "imposes the archetypal common law

remedy of money damages, which is 'all but dispositive' of the Seventh Amendment

issue." *AT&T*, 2025 WL 1135280, at *6 (quoting *Jarkesy*, 603 U.S. at 126).

### C. The Fact That, in General, There is No Constitutional Right to a Jury Trial Against the Sovereign Only Tells Half of Our History.

The Government argues that "there was no right at common law to bring a suit

against the sovereign without the sovereign's consent[.]" Opp. at 17. True enough,

but once more, "[u]pon this point a page of history is worth a volume of logic." *New

York Tr.*, 256 U.S. at 349.

Historically, one could not sue the Government to recover taxes imposed

because there was no waiver of sovereign immunity. Consequently, the practice was

to sue the tax collector. *See Flora v. United States*, 362 U.S. 145, 152–53 (1960) ("[a]

suit to recover taxes could, before the Tucker Act, be brought only against the

Collector"); *City of Philadelphia v. Collector*, 75 U.S. 720, 730-33 (1866) (the "sue the collector" remedy held to apply in tax cases). "Such a suit was based upon the common-law count of assumpsit for money had and received, and the nature of that count requires the inference that a suit for recovery of part payment of a tax could have been maintained." *Flora*, 362 U.S. at 153.[4]

And this Court has recognized that "assumpsit, [is] an action at law under the common law." *Hughes v. Priderock Cap. Partners, LLC.*, 812 F. App'x 828, 833 (11th Cir. 2020) (citation omitted). *See also id.* at 834 ("assumpsit, is the product of a long tradition in law, and is an action at law.") (citation omitted).

Accordingly, at the Founding, while there was no right to a jury trial against the Government in tax cases, there was a right to sue the tax collector under assumpsit. *Flora*, 362 U.S. at 153. And because assumpsit is a common law action, *Hughes*, 812 F. App'x at 833, the Seventh Amendment right to a jury trial attached. Further, for cases where the Government affirmatively sought penalties against taxpayers, the Government had to bring a common law action in debt,[5] which entitled taxpayers to a jury trial. *Tull*, 481 U.S. at 418; *Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1524

---

[4] Suits against the collector have been abolished. *See* Act of Nov. 2, 1966, Pub. L. No. 89-713, § 3, 80 Stat. 1107, 1108.
[5] *See, e.g.,* Whiskey Tax of March 3, 1791, ch. 15, § 44, 1 Stat. 199, 209 (penalties to be "recoverable with costs of suit, by action of debt.").

(11th Cir. 1991) (an action in debt to recover civil penalties entitled litigant to jury trial). Thus, at the Founding, both offensive and defensive tax cases were subject to jury trials.

In response to the exigencies of the Civil War in 1867, Congress permitted, for the first time, the Government to assess and collect fraud penalties without suit. *See* Amicus Br. at 18 (citing Revenue Act of March 2, 1867, ch. 169, §§ 3, 8, 13, 15 Stat. 471, 471–72, 473, 477–80). That remains the practice to this very day. *See* Amicus Br. at 17-18 (surveying the history of tax penalties).

But the Supreme Court has been clear that "[u]nlawful acts, performed long enough and with sufficient vigor, are never enough to amend the law. To hold otherwise would be to elevate the most brazen and longstanding injustices over the law, both rewarding wrong and failing those in the right." *McGirt v. Oklahoma*, 591 U.S. 894, 937–38 (2020). Indeed, "[s]tanding alone," however, "historical patterns cannot justify contemporary violations of constitutional guarantees[.]" *Marsh v. Chambers*, 463 U. S. 783, 790 (1983).

Thus, the fact that modern practice conflicts with the practice at the Founding is evidence of a constitutional problem. At bottom, because both offensive and defensive tax cases entitled taxpayers to a jury trial at the Founding means that taxpayers are entitled to jury trial today.

## D. Civil Tax Fraud Penalties are at Least Partially Punitive, Not Wholly Remedial, No Precedent Holds Otherwise, and they Cannot Fall Under the Public Rights Doctrine.

The Government's suggestion that the tax fraud penalties at issue have been held to be remedial and serve no punitive purpose is wrong. Specifically, the Government relies on *Helvering v. Mitchell*, 303 U.S. 391 (1938), as purportedly "controlling authority hold[ing] that such penalties are properly considered remedial[.]" Opp. at 31. But that case only considered "whether assessment of the [civil] addition is barred by the acquittal of the defendant on an indictment ... for a [criminal] willful attempt to evade and defeat the tax." *Helvering*, 303 U.S. at 392. And the holding was similarly narrow, only bearing on whether post-criminal acquittal civil sanctions violated double jeopardy: "[s]ince we construe section 293(b) as imposing a civil administrative sanction, neither case presents an obstacle to the recovery of the $364,354.92, the 50 per centum addition here in issue." *Id.* at 406.

While "[t]he punitive/remedial distinction *in the context of double jeopardy claims* is often determined based upon a consideration of the proportionality between the civil penalty assessed and the government's actual damages[,]" *Thomas v. Comm'r*, 62 F.3d 97, 100 (4th Cir. 1995) (emphasis added), that does not control the punitive/remedial analysis for Seventh Amendment purposes:

> constitutional provisions do not preempt one another like that. Indeed, the Supreme Court has already rejected the argument that the Fourth

Amendment does not apply to interferences with property rights just because the Fifth Amendment does.... And if multiple violations are alleged, we must examine each constitutional provision in turn.

*Asinor v. D.C.*, 111 F.4th 1249, 1259 (D.C. Cir. 2024) (cleaned up, quoting *Soldal v. Cook County*, 506 U.S. 56, 70 (1992)).

Although the Government would like to have the double jeopardy (i.e., criminally punitive) analysis control, it does not. As the D.C. Circuit explained, "we must examine each constitutional provision" in its own right: "[s]o, the question whether [*Asinor*] implicates procedural due process, substantive due process, or the Takings Clause is irrelevant to the question whether it also implicates the Fourth Amendment." *Id.* Likewise, the question of whether the tax fraud penalties implicate double jeopardy "is irrelevant to the question whether it also implicates the [Seventh] Amendment." *Id.*

The Government nevertheless would have the criminal analysis apply here. "But *Helvering* is not binding in this case. *Helvering* was a double jeopardy case applying a standard — whether the penalty was "intended as punishment[.]" *United States v. Schwarzbaum*, 127 F.4th 259, 275 (11th Cir. 2025).

This Court's Eighth Amendment analysis in *Schwarzbaum* applies with full force here, where the Court explained how the

the Court in *Bajakajian* distinguished its holding from its opinion in [*Emerald Cut Stones*]. In *Emerald Cut Stones*, the Court, writing about Fifth

Amendment double jeopardy, held that a tariff forfeiture provision was entirely remedial in nature, and thus non-punitive, because it provided a reasonable form of liquidated damages for violation of the inspection provisions and served to reimburse the Government for investigation and enforcement expenses.

*Id.* at 271 (cleaned up).

This Court continued:

Distinguishing *Emerald Cut Stones*, the Court in *Bajakajian* wrote that the additional fact that such a remedial forfeiture also serves to reimburse the Government for investigation and enforcement expenses, is essentially meaningless, because even a clearly punitive criminal fine or forfeiture could be said in some measure to reimburse for criminal enforcement and investigation. Instead, the Court explained that the critical question remained whether the penalty is designed to punish the offender and thus serves as punishment even in part. If so, the penalty is subject to the Eighth Amendment Excessive Fines Clause.... *Even if the Government were correct in claiming that the forfeiture of respondent's currency is remedial in some way, the forfeiture would still be punitive in part... [which] is sufficient to bring the forfeiture within the purview of the Excessive Fines Clause.*

*Id.* at 271 (cleaned up, emphasis added).

And this Court diverged with the decision in *United States v. Toth*, 33 F.4th 1

(1st Cir. 2022), where

the First Circuit considered whether a $2 million penalty for willful failure to file an FBAR violated the Excessive Fines Clause. The First Circuit looked to civil forfeiture under early customs laws and to civil tax penalties, which the Supreme Court held to be non-punitive for double jeopardy purposes in *Helvering v. Mitchell*. The First Circuit reasoned that the FBAR penalty similarly reimbursed the United States for the generalized harm stemming from the concealment of money it is entitled to, including the difficulty for law enforcement to investigate these

accounts, all of which can be far greater than the simple value of the money the Government was entitled to in the first place.

But *Helvering* is not binding in this case. *Helvering* was a double jeopardy case applying a standard —whether the penalty was "intended as punishment,"— that is no longer applicable in the Excessive Fines context.

*Schwarzbaum*, 127 F.4th at 274–75 (cleaned up).

Indeed, the Eighth Amendment standard is virtually (if not actually) identical to the Seventh Amendment's,[6] under which "a monetary remedy is legal is if it is designed to punish or deter the wrongdoer [rather than] solely to restore the status quo." *Jarkesy*, 603 U.S. at 123 (cleaned up). "Thus, the question is not, as the United States would have it, whether [a tax fraud penalty] is civil or criminal, but rather whether it is punishment." *Austin v. United States*, 509 U.S. 602, 610 (1993) (cleaned up). Civil tax fraud "penalties are not remedial. They are not designed solely to restore the status quo." *AT&T*, 2025 WL 1135280, at *5 (cleaned up).

Inescapably, any genuine consideration results in finding that civil tax fraud penalties involve punishment, just as this Court concluded of FBAR penalties:

even if the FBAR penalty has some remedial purpose, the test in the Excessive Fines context remains whether the purpose of the penalty is *solely* compensatory. For the reasons we have already explained, it is not. As Justice Gorsuch put it, dissenting from the denial of certiorari in *Toth*:

---

[6] This reflects common sense: while the double jeopardy analysis is criminal in nature, the Excessive Fines Clause extends to, and the Seventh Amendment solely concerns, civil sanctions.

> Even supposing, however, that [the appellant's] penalty
> bore both punitive and compensatory purposes, it would
> still merit constitutional review. Under our cases a fine that
> serves even "*in part* to punish" is subject to analysis under
> the Excessive Fines Clause.

*Schwarzbaum*, 127 F.4th at 275 (cleaned up, emphasis in original, quoting *Toth v.
United States*, 143 S. Ct. 552, 553, *reh'g denied,* 143 S. Ct. 2604 (2023) (Gorsuch, J.,
dissenting from denial of certiorari)).

Forsooth, a finding that the civil tax fraud penalties have *no punitive* effect is
incorrect. *See, e.g., Mohamed*, 2013 WL 5988943, at *10 (applying the rule of lenity to
fraud penalties *because they are punitive*); *Toth*, 143 S. Ct. at 553 (Gorsuch, J.,
dissenting) (cleaned up) ("Really, the notion of 'nonpunitive penalties' is a
contradiction in terms.").

And here, the penalties asserted against Petitioners share the same punitive
characteristics and, as Justice Gorsuch explained, the Excessive Fines Clause "would
mean little if the government could evade constitutional scrutiny under the Clause's
terms by the simple expedient of fixing a 'civil' label on the fines it imposes and
declining to pursue any related 'criminal' case. Far from permitting that kind of
maneuver, this Court has warned the Constitution guards against it." *Id.* (Gorsuch, J.,
dissenting). Likewise, the Seventh Amendment "would mean little if the government
could evade constitutional scrutiny under [its] terms by the simple expedient of fixing

a[n] '[addition to tax]' label on the [penalties] it imposes.... Far from permitting that kind of maneuver... the Constitution guards against it." *Id.* (Gorsuch, J., dissenting).

Fraud penalties similarly do not fit within the public rights exception. The Supreme "Court has not definitively explained the distinction between public and private rights," *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 334 (2018), but any common-sense analysis defies its application here. Declining to detail its precise boundaries, the High Court concluded that "[i]nter partes review falls squarely within the public-rights doctrine... [because] the decision to *grant* a patent is a matter involving public rights—specifically, the grant of a public franchise. Inter partes review is simply a reconsideration of that grant[.]" *Id.* at 334–35 (emphasis in original). Tax fraud penalties do not involve any public rights, only private liabilities.

The Government's allegations of fraud, if proven, impose "civil penalties, a form of monetary relief. Such relief is legal in nature [because] it is designed to punish or deter the wrongdoer rather than solely to restore the status quo." *Jarkesy*, 603 U.S. at 111 (cleaned up). Accordingly, this Court should "respectfully decline to repeat [the Tax Court's] mistakes[,]" *Schwarzbaum*, 127 F.4th at 275 (cleaned up), reject the Government's arguments, and find that the Government's assertion of civil tax fraud penalties at issue "implicates the Seventh Amendment right and [Petitioners are] entitled to a jury on these claims." *Jarkesy*, 603 U.S. at 111

## III. NEITHER A DISTRICT COURT REFUND SUIT NOR A GOVERNMENT ACTION TO REDUCE ASSESSMENT TO JUDGMENT IS A SUBSTITUTE THAT UPHOLDS THE SEVENTH AMENDMENT.

The Government's suggestion that a refund action in district court is a suitable alternative to comport with the Seventh Amendment is mistaken. Despite that a jury is available to taxpayers seeking refunds,[7] as the Government notes, "[t]o bring a refund suit, a taxpayer must first pay the taxes and penalties, ordinarily in full...." Opp. at 3 (citation omitted). Obviously, requiring payment in full prior to —and as a precondition for obtaining— a jury trial on the question of liability for fraud does not suffice.

The Government's suggestion that, irrespective of whether tax, penalties, and interest totaled $50, $50 million, or $50 billion, any taxpayer can forego "review in the Tax Court and instead pay the liabilities reflected in the notices of deficiency; submit administrative refund claims; and, if the IRS denied their claims or six months elapsed without a decision thereon, file refund suits in district court[,]" Opp. at 37, proves too much and is divorced from reality. For a taxpayer who cannot afford to fully pay the asserted deficiency and penalties, it is a forcible restriction of access to a trial by jury, and it is compulsion to petition the Tax Court by threat of imminent

---

[7] 28 U.S.C. § 1346(a)(1); 28 U.S.C. § 2402.

assessment followed by collection (including the loss of any right to challenge the underlying liability).[8]

Choosing to proceed with prepayment review is not a waiver of a jury trial that is only available for purchase. The Government could evade the contours of the Seventh Amendment simply by imposing a penalty so large that a taxpayer could not afford, or could not reasonably assume the financial burden, to pay it in full. The Constitution is not so easily bypassed, and this Court should not hold that the Seventh Amendment right is for sale.

But the suggestion fails aside from that obvious disqualification. The question at issue is whether Petitioners are entitled to a jury trial to determine whether the Government can establish liability for civil tax fraud by satisfying the burden of proof by clear and convincing evidence. 26 U.S.C. § 7454(a); Tax Ct. R. 142(b).

In contrast, the question in a tax refund suit is whether taxpayers can establish they are entitled to a refund (e.g., by not being liable for civil tax fraud) by satisfying their burden of proof by a preponderance of the evidence. *See United States v. Anderson*,

---

[8] *See* 26 U.S.C. § 6330(c)(2)(B) (allowing at collection due process hearings "challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.").

269 U.S. 422, 443 (1926) ("[s]ince the suit was one to recover a tax erroneously exacted, the burden was on the petitioners").

Quite simply, the two suits do not concern the same questions and are not substitutes that comply with the Seventh Amendment. The distinctions are meaningful, and it is axiomatic that "[t]he basic function of the burden of proof is to allocate among the litigants the task of gathering and presenting evidence in the case." Bruce L. Hay, *Allocating the Burden of Proof*, Indiana Law Journal: Vol. 72; Iss. 3, Article 2, at 654 (1997).

To emphasize —it is an affront to the Seventh Amendment to force taxpayers to have to choose between (i) defending against fraud allegations in the Tax Court where the Government has the burden of persuasion by clear and convincing evidence, and in doing so losing their Seventh Amendment rights and (ii) prosecuting a tax refund case in the district court (where they must prepay the tax, penalties, and interest), only to accept the burden of persuasion by a preponderance of the evidence in order to maintain their right to a jury trial.

Nor does the ability of the Government to initiate a post-Tax Court suit to reduce the assessment to judgment have any bearing. Indeed, the questions presented in such an action in no way resemble those at issue in proceedings to determine liability in the Tax Court or even in refund actions. For instance, if taxpayers elect to

challenge liability in Tax Court, and are deprived of a jury trial on the issue of liability for fraud, they do not obtain such a jury determination in government-brought action to reduce assessment to judgement in district court; rather, the Tax Court's decision has preclusive effect.

> The Fifth Circuit explained in one such circumstance:

> The United States brought this suit to reduce to judgment income tax and transferee liability assessments that it had made against Bernice H. Shanbaum ... to foreclose upon tax liens.... The assessments were made after the government and the Shanbaums entered into agreed decisions in the United States Tax Court.... After a one-day bench trial ... the district court concluded that Mrs. Shanbaum should be relieved of her tax liability because she was an "innocent spouse".... The government appeals, contending that the doctrine of res judicata required the district court to give the Tax Court decisions preclusive effect and thus barred Mrs. Shanbaum from raising the innocent spouse defense in.... Agreeing with the government's contentions, we find that the district court erred, and we reverse.

*United States v. Shanbaum*, 10 F.3d 305, 308 (5th Cir. 1994).

The suggestion that a suitable alternative exists because Petitioners could have ignored the notices of deficiency, not paid, and "waited for the Government to bring a district-court suit to reduce the liabilities to judgment and requested a jury trial" fares no better. Opp. at 38 n. 8.

Once a taxpayer's time to petition the Tax Court expires, the Government assesses the asserted deficiency and penalty amounts and can use administrative tools for collection. A suit to reduce the assessment to judgment does not concern the

substantive liability but is simply to allow a judgment to expand the collection tools to include judicial intervention. "In reducing an assessment to judgment, the Government must first prove that the assessment was properly made. The Government's submission of a Form 4340 establishes such a presumption. Once the Form is provided, the taxpayer must then prove that the assessment is erroneous in order to prevail." *United States v. White*, 466 F.3d 1241, 1248 (11th Cir. 2006).

Thus, the action is not about the underlying *correctness* of the assessment; rather, it is only about its procedural propriety. That is nothing of the sort at issue here, and in such a case, the assessment will virtually always be proper because "[i]f the taxpayer does not file a petition with the Tax Court within the time prescribed ..., the deficiency, notice of which has been mailed to the taxpayer, *shall be assessed*, and shall be paid upon notice and demand from the Secretary." 26 U.S.C. § 6213(c) (emphasis added). And the taxpayer will have waived any ability to challenge the underlying liability, whether by jury trial, bench trial, or administratively. *See* 26 U.S.C. § 6330(c)(2)(B).

Moreover, the Fifth Circuit has rejected the argument that the possibility of having a subsequent case that would entitle a litigant to a jury trial would suffice. *See AT&T*, 2025 WL 1135280, at *9 ("The Commission cites no authority supporting the proposition that the constitutional guarantee of a jury trial is honored by a trial

occurring after an agency has already found the facts, interpreted the law, adjudged guilt, and levied punishment."). So too here, as once the Tax Court has already found the facts, applied it to the fraud standard, and issued a "decision" against the Petitioners, a subsequent jury trial on a reduction to judgment suit does not comply with the Seventh Amendment right to a jury trial. *See id*; *Shanbaum*, 10 F.3d at 314 ("Having once had the opportunity to assert defenses to [their] tax liability, res judicata bar[s] [taxpayers] from asserting [them subsequently] in the district court....").

Resultingly, no Seventh Amendment compliant alternative exists. Petitioners have not waived their right to a jury trial and are entitled to it in the proceedings below.

## CONCLUSION

For the reasons stated herein and, in the Petitioners' initial petitions, the Court should issue the writ, vacate the order below, and instruct the Tax Court to provide the Petitioners with a jury trial on the Government's fraud claims.

Respectfully Submitted,                                    May 7, 2025

/s/ Joseph A. DiRuzzo, III
Joseph A. DiRuzzo, III
Fla. Bar. No. 0619175
MARGULIS GELFAND DIRUZZO & LAMBSON
401 East Las Olas Blvd., Suite 1400
Ft. Lauderdale, FL 33301
954.615.1676 (o)/954.827.0340 (f)
jd@margulisgelfand.com

/s/ Daniel M. Lader
Daniel M. Lader
Fla. Bar No. 1004963
MARGULIS GELFAND DIRUZZO & LAMBSON
401 East Las Olas Blvd., Suite 1400
Ft. Lauderdale, FL 33301
954.615.1676 (o)/954.827.0340 (f)
dan@margulisgelfand.com

*Counsel for the Petitioners*

## CERTIFICATE OF COMPLIANCE RE: WORD COUNT

Pursuant to Fed. R. App. P. 21(d)(1) counsel certifies that this brief is in compliance with the 7,800 type-volume limitation. The instant brief is 6,859 words in length. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, Goudy Old Style font in 14 point.

/s/ Daniel M. Lader
Daniel M. Lader

## CERTIFICATE OF SERVICE

I certify that on May 7, 2025, a copy of the foregoing was uploaded via the Court's electronic filing system, which will provide a NEF to counsel of record, and that 4 paper copies of the reply will be submitted via USPS. I certify that a paper copy of the petition will be served via USPS to the following:

Geoffrey J. Klimas
Tax Division, Department of Justice
Post Office Box 502
Washington, D.C. 20044

/s/ Daniel M. Lader
Daniel M. Lader